**Reversed and Remanded and Majority and Dissenting Opinions filed April 3, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00006-CV

---

## IN THE INTEREST OF K.D.H., A CHILD

---

**On Appeal from the 257th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-06890**

---

## M A J O R I T Y   O P I N I O N

Today, for the first time, this court addresses the legal standard for establishing standing under section 102.004(a)(1) of the Texas Family Code. We conclude that, to have standing under this statute, a grandparent or other relative within the third degree by consanguinity must present proof that, when considered in the light most favorable to the petitioner, would enable reasonable and fair-minded people to find that the order requested is necessary because the child's circumstances on the date suit was filed would significantly impair the child's physical health or emotional development. We conclude that the grandmother in

this appeal demonstrated the requisite standing under this statute to bring suit seeking sole managing conservatorship of her granddaughter and that the trial court erred in determining that the grandmother lacked standing. Accordingly, we reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Zoe Higgins ("Grandmother") is the paternal grandmother of the minor child who is the subject of this appeal ("Child"). After the Child's mother ("Mother") tested positive for marijuana while pregnant with the Child, the Texas Department of Family and Protective Services (hereinafter the "Department") made arrangements for the Child to be placed with the Grandmother.[1] From shortly after the Child's birth in October 2011 until February 2, 2012, the Grandmother cared for the Child at the Grandmother's home. The day the Child was returned to the care of the Child's Mother, the Grandmother filed an original suit affecting the parent-child relationship, seeking to be appointed the sole managing conservator of the Child. The Grandmother invoked section 102.004(a)(1) of the Texas Family Code as a basis for her standing to file suit.[2] In support of standing, the Grandmother filed an affidavit, in which she testified, among other things, that the Child's father ("Father") was incarcerated at the time the suit was filed and that the Mother had two previous convictions for driving while intoxicated ("DWI") and one previous conviction for child endangerment. The Grandmother asserted that it is in the best interest of the Child that the Grandmother be appointed as the Child's sole managing conservator. The

---

[1] The Department filed a status report in the trial court describing this action as a "placement." By stating in this opinion that the Child was placed with the Grandmother, we are not suggesting that the Department filed any lawsuit against the Mother or Father or that the Department was ever appointed as a conservator of the Child.

[2] The Grandmother asserted other bases for standing in her pleadings. On appeal, she does not argue these other bases, and we do not address them in this opinion.

2

Grandmother further alleged that the Child's parents have a history of child neglect and physical abuse directed at the Child. The Grandmother filed a written request for a jury trial and paid the jury fee.

The Mother filed a plea to the jurisdiction, asserting that the Grandmother had no standing to bring suit. The Mother did not submit any evidence in support of the plea to the jurisdiction. In the Grandmother's response in opposition, the Grandmother presented documentary evidence from the Department as well as certified copies of judgments reflecting the Mother's various criminal convictions. The trial court conducted a hearing on the plea to the jurisdiction.

The Grandmother appeared at the hearing and the Child's parents each appeared pro se. The Grandmother testified at the hearing. The Mother and Father made arguments to the trial court but did not testify or offer any other evidence.[3] The trial court sustained the Mother's plea to the jurisdiction and dismissed the Grandmother's suit based on lack of standing. The Grandmother appeals from the trial court's dismissal order.

## II. STANDARD OF REVIEW

Standing, which is a component of subject-matter jurisdiction, is a threshold issue in a custody proceeding. *In re Vogel*, 261 S.W.3d 917, 920 (Tex. App.— Houston [14th Dist.] 2008, orig. proceeding). Whether a person has standing is a question of law, and we review an order dismissing for lack of standing under the

---

[3] The reporter's record reflects that neither the Mother nor Father testified at the hearing. The court reporter listed the witnesses who testified and did not list the Mother or the Father. The reporter's record states that "witnesses" were sworn at the beginning of the hearing. Presuming for the sake of argument that the Mother and the Father were sworn at this time, a witness can be sworn and then not testify. At the end of the hearing, the trial court asked the Mother and the Father for their respective positions, but the record does not reflect that they testified as witnesses. The Mother and the Father each were acting pro se at the hearing, and their respective statements at the hearing were in the nature of argument, not testimony.

3

de novo standard. *See In re I.M.S.*, No. 14-07-00638-CV, 2008 WL 5059179, at *2 (Tex. App.—Houston [14th Dist.] Dec. 2, 2008, no pet.) (mem. op.); *In re Vogel*, 261 S.W.3d at 920–21. We review the trial court's interpretation of applicable statutes de novo. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655–56 (Tex. 1989).

## III. ISSUE AND ANALYSIS

In a single appellate issue, the Grandmother asserts that the trial court erred in determining that she lacked standing under section 102.004(a)(1) of the Texas Family Code.[4] We first address the legal standard for making this determination and then we decide whether the trial court erred in ruling that the Grandmother lacks standing.

**A.   What standard applies in determining whether a grandparent or other relative of the child within the third degree by consanguinity has standing under Texas Family Code section 102.004(a)(1)?**

When standing has been conferred by statute, the statute itself should serve as the proper framework for a standing analysis. *In re Sullivan*, 157 S.W.3d 911, 915 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding [mand. denied]). Section 102.004(a) of the Texas Family Code, entitled "Standing for Grandparent or Other Person," states:

> (a) In addition to the general standing to file suit provided by Section 102.003, a grandparent, or another relative of the child related within the third degree by consanguinity, may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that:
>
> (1) the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development; or

---

[4] Unless otherwise specified, all statutory references in this opinion are to the Texas Family Code.

(2) both parents, the surviving parent, or the managing conservator or custodian either filed the petition or consented to the suit.

Tex. Fam. Code Ann. § 102.004(a) (West 2014).

The Grandmother has not cited, and research has not revealed, any cases from the Supreme Court of Texas or this court that address what is necessary for there to be "satisfactory proof to the court" in the context of section 102.004(a), and the issue appears to be one of first impression for this court.[5] Several sister courts of appeals have concluded that, under section 102.004(a), the trial court makes findings as to whether the petitioner proved the proposition in question and that on appeal a party may challenge the legal or factual sufficiency of the evidence supporting these findings. *See, e.g., Medrano v. Zapata*, No. 03-12-

---

[5] This court previously has indicated that we should not review this determination as if it were a finding as to whether the parental presumption had been rebutted at the trial on the merits. *See In re Vogel*, 261 S.W.3d at 922. The *Vogel* court concluded that standing is determined as of the date the petition was filed and that, for there to be standing under section 102.004(a)(1), the record must contain evidence that the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development. *See id.* The *Vogel* court did not address what the record must contain to satisfy this requirement. *See id.* at 920–22. It is not clear exactly what standard of review the *Vogel* court applied. *See id.* The *Vogel* court stated a trial court's ruling regarding standing is reviewed de novo to determine "whether any evidence in the record supports standing." *Id.* at 921. The *Vogel* court did not state that there were any express or implied findings by the trial court regarding standing, nor did the *Vogel* court state that it was reviewing any such findings under a deferential standard of review to determine if they were supported by legally sufficient evidence. *See id.* at 920–22. Likewise, the *Vogel* court did not state that it was reviewing the evidence in the light most favorable to the challenged findings and indulging every reasonable inference that would support these findings. *See id.* Nor did the *Vogel* court say that the trial court is the sole judge of witness credibility and the weight to give to testimony. *See id.* The *Vogel* court stated that "the trial court reasonably could have found that [the child's] present circumstances . . . would significantly impair his physical health or emotional development." *Id.* at 922. But, this language is consistent with either a legal-sufficiency analysis or an inquiry into whether the evidence, when considered in the light most favorable to the petitioner, would enable a reasonable and fair-minded factfinder to make the finding in question. *See id.*

5

00131-CV, 2013 WL 6921500, at \*5–9 (Tex. App.—Austin Dec. 31, 2013, no. pet. h.) (mem. op.) (concluding that "satisfactory proof to the court" as used in section 102.004(a) means proof by a preponderance of the evidence and that, under this statute, the trial court makes findings as to whether the petitioner proved the proposition in question by a preponderance of evidence, the legal or factual insufficiency of which may be challenged on appeal).

In construing section 102.004, our objective is to determine and give effect to the Texas Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). We must ascertain that intent, if possible, from the language the Texas Legislature used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). When statutory language is unambiguous and yields only one reasonable interpretation, this court must interpret the statute according to its plain meaning. *See Iliff v. Iliff*, 339 S.W.3d 74, 79 (Tex. 2011). We must not engage in forced or strained construction; instead, we must defer to the plain sense of the words the Texas Legislature chose. *See St. Luke's Episcopal Hosp.,* 952 S.W.2d at 505.

In section 102.004, the Texas Legislature provided a basis for standing in addition to the standing provided by section 102.003. *See* Tex. Fam. Code Ann. § 102.004(a). The legal term "standing" has a technical and particular meaning. *See Bland Indep. School Dist. v. Blue*, 34 S.W.3d 547, 553–55 (Tex. 2000). Words that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly. Tex. Gov't Code Ann. § 311.011(b) (West 2014); *In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012). We

presume the Texas Legislature enacted the current version of section 102.004 with complete knowledge of the existing law and with reference to it. *See id.*

Ordinarily, standing is based on the existence of certain facts, not the existence of certain proof. For example, an original suit seeking appointment as sole managing conservator may be filed by "a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." Tex. Fam. Code Ann. § 102.003(a)(9) (West 2014). An individual filing such a suit and claiming standing under this statute need only file her petition and allege that she is a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition. *See id.*; *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In such a case, pleading a proper basis for standing is sufficient to show standing, unless a party challenges standing and submits evidence showing the non-existence of a fact necessary for standing.[6] *See Miranda*, 133 S.W.3d at 227. In that event, the petitioner must submit evidence raising a fact issue on the challenged elements to avoid a dismissal for lack of standing. *See id.* at 227–28. Suits affecting the parent-child relationship are governed by the same procedural law that applies in civil cases generally, except as otherwise provided by the Family Code. *See* Tex. Fam. Code Ann. § 105.003 (West 2014); *In re E.A.C.*, 162 S.W.3d 438, 442 (Tex. App.—Dallas 2005, no pet.).

Section 102.004(a) is an unusual provision because, in it, the Texas Legislature confers standing on certain parties based on the existence of proof

---

[6] In this opinion we do not state or suggest that pleading standing under section 102.004(a), by itself, would be sufficient to satisfy the requirements of that statute.

rather than the existence of facts. *See* Tex. Fam. Code Ann. § 102.004(a). Under this statute, a grandparent, or other relative of the child related within the third degree by consanguinity, may have standing to file an original suit requesting managing conservatorship under certain circumstances, even though that person does not have standing under section 102.003, the general standing statute. *See* Tex. Fam. Code Ann. § 102.004(a). The Texas Legislature has decided that this additional grant of standing should be given only if "there is satisfactory proof to the court" of either of two propositions. *See id.* The proposition in issue in today's case is that the order requested is necessary because the Child's present circumstances would significantly impair the Child's physical health or emotional development. *See id.*

Under section 102.004(a), the trial court acts as a gatekeeper in assuring that satisfactory proof exists of the proposition upon which the petitioner relies to establish standing under this statute.[7] *See id.* As a threshold matter, we must

---

[7] Our dissenting colleague emphasizes the effect that the plurality opinion in *Troxel v. Granville* has had on legislation and the importance of the "dictates of *Troxel*." *See post* at p. 8–9, 15. Several observations merit special mention. Fit parents certainly have fundamental constitutional rights to make decisions concerning the care, custody, and control of their own children. *See Troxel v. Granville*, 530 U.S. 57, 65–66, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000) (plurality op.) (collecting cases and concluding that "it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children"); *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944) (stating that "it is cardinal with us that the custody, care, and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder"). But, it should be noted that Justice O'Connor's opinion in *Troxel* was a plurality opinion. *See Troxel*, 530 U.S. at 60, 120 S.Ct. at 2057. In addition, the *Troxel* plurality concluded that the visitation statute at issue was unconstitutional as applied based upon the "sweeping breadth" of the statute; the plurality did not address (1) whether the Due Process Clause of the United States Constitution requires all nonparental-visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation, (2) the scope of the parental due process right in the visitation context, or (3) the constitutionality of a statute addressing appointment of a nonparent as managing conservator of a child. *See id.*, 530 U.S. at 73, 120 S.Ct. at 2064; *In re C.A.M.M.*, 243 S.W.3d 211, 219 & n.11 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

determine the standard under which the trial court performs the gatekeeper function as well as the standard by which this court reviews the gatekeeper ruling.

The term "satisfactory" is not defined in the statute, and it does not have a technical or particular meaning.  Accordingly, we construe this term based on its ordinary meaning. *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 672, n.19 (Tex. 2006).  A dictionary definition of "satisfactory" is "giving or affording satisfaction; fulfilling all demands or requirements," and a synonym of "satisfactory" is "adequate." *See* Dictionary.com Unabridged (Random House, Inc.) http://dictionary.reference.com/browse/satisfactory (accessed February 14, 2014).  The statutory phrase "satisfactory proof to the court" could be construed to mean whatever level of proof is deemed sufficient by the particular trial judge under whatever standard the trial judge chooses.  But, such a construction would be unreasonable because it would result in a lack of uniformity as to the standard applied by the many trial judges across Texas, resulting in arbitrary, subjective, and random application. Moreover, such a construction would give trial judges unreviewable discretion to find that a particular grandparent, or other relative of the child related within the third degree by consanguinity, has standing.

The statutory phrase "satisfactory proof to the court" also could be construed to mean that, to have standing under section 102.004(a), the petitioner must prove the proposition in question at an evidentiary hearing at which the trial court acts as factfinder.  Under this construction, if the defendant were to file a plea to the jurisdiction challenging standing and the trial court were to find the facts in favor of the standing proposition, the petitioner would have standing to proceed with the suit, but, if the trial court were to find the facts against the standing proposition and dismiss the case, the petitioner could appeal and challenge the legal or factual

9

sufficiency of the trial court's factfindings on standing.[8]  Under this construction, appellate courts would defer to the trial court's fact findings regarding standing under section 102.004(a) rather than review the trial court's determination de novo. This construction, however, contradicts a fundamental principle of Texas law underlying standing and pleas to the jurisdiction—appellate review of the trial court's ruling on a plea to the jurisdiction is conducted under a de novo standard of review. *See Miranda*, 133 S.W.3d at 228; *In re I.M.S.*, 2008 WL 5059179, at \*2; *In re Vogel*, 261 S.W.3d at 920–21.

In today's case, the Grandmother timely filed a written request for a jury trial and paid the jury fee, thus invoking her constitutional right to a jury trial.  *See* Tex. Const. art. 1, § 15; Tex. Fam. Code Ann. § 105.002(a),(b)(West 2014); Tex. R. Civ. P. 216.  The Texas Legislature has emphasized that, in an original proceeding in which one or more parties seek appointment as a managing conservator, parties who invoke their right to a jury trial are entitled to a jury trial on the issue of the appointment of a managing conservator, and the trial court may not contravene the jury's verdict on the conservatorship issue.[9]  *See* Tex. Fam. Code Ann. § 105.002(c)(1); *In re Reiter*, 404 S.W.3d 607, 609 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding).

To succeed on the merits of her suit to be appointed the sole managing conservator of the Child, the Grandmother must prove that appointment of the Mother or the Father as a managing conservator would not be in the Child's best interest because such an appointment would significantly impair the Child's

---

[8] Our dissenting colleague adopts such an approach to the statute. *See post* at p. 2.

[9] In this proceeding, the Grandmother has not challenged the constitutionality of section 102.004 or any other statute, nor do we suggest or imply that section 102.004 is unconstitutional.  Instead, we consider as part of a statutory-interpretation analysis the effect of the potential interpretations of this statute on the right to a jury trial of a grandparent or other relative within the third degree by consanguinity.

physical health or emotional development. *See* Tex. Fam. Code Ann. § 153.131(a) (West 2014). For standing under section 102.004(a)(1), there must be satisfactory proof to the court that an order appointing the Grandmother as sole managing conservator of the Child is necessary because the Child's present circumstances in the care of the Mother and the Father would significantly impair the Child's physical health or emotional development. *See* Tex. Fam. Code Ann. § 102.004(a)(1). Thus, for the Grandmother to have standing, the record must contain satisfactory proof as to part of what the Grandmother has to establish to prevail on the merits of her suit. *See* Tex. Fam. Code Ann. §§102.004(a)(1), 153.131(a). This is a case in which the jurisdictional standing challenge implicates the merits of the petitioner's case and the plea to the jurisdiction involves evidence. The Supreme Court of Texas has held that in this situation the trial court is to review the relevant evidence to determine if a fact issue exists. *See Miranda*, 133 S.W.3d at 227; *Sewell v. Hardriders, Inc.*, No. 14-12-00541-CV, 2013 WL 3326798, at *3–4 (Tex. App.—Houston [14th Dist.] June 27, 2013, no pet.) (mem. op.). If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder (in today's case, the jury). *See Miranda*, 133 S.W.3d at 227–28; *Sewell*, 2013 WL 3326798, at *3–4. But, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court is to rule on the plea to the jurisdiction as a matter of law. *See Miranda*, 133 S.W.3d at 228; *Sewell*, 2013 WL 3326798, at *3–4. Adopting a construction of "satisfactory proof to the court" that casts the trial court as the factfinder regarding the section 102.004(a)(1) proposition would contravene these important principles of law regarding standing and pleas to the jurisdiction. *See Miranda*, 133 S.W.3d at 227–28; *Sewell*, 2013 WL 3326798, at *3–4. This contradiction would exist whether or not the petitioner invoked the right to a jury trial. Nonetheless, in cases

like the one under review, in which the petitioner has invoked her right to a jury trial, such a construction of section 102.004(a)(1) also would deprive the petitioner of the right to have the jury, rather than the trial court, be the factfinder on this issue. *See* Tex. Const. art. 1, § 15; Tex. Fam. Code Ann. § 105.002(a),(b); Tex. R. Civ. P. 216; *In re Reiter*, 404 S.W.3d at 609.

For all of the foregoing reasons, it would be unreasonable to construe section 102.004(a)(1) so that the trial court is the factfinder who makes credibility determinations as to the proposition in section 102.004(a)(1).[10]

The statutory phrase "satisfactory proof to the court" also could be construed to mean that, to have standing under section 102.004(a)(1), the trial court must determine whether there is a genuine fact issue as to the proposition in question, and appellate courts then would review this determination de novo. Under this construction, the trial court would determine whether the evidence submitted regarding the standing issue, considered in the light most favorable to the petitioner, would enable reasonable and fair-minded people to find that the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development. *See* Tex. Fam. Code Ann. § 102.004; *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

Under this construction, the trial court still would perform a gatekeeper function, and the statute would comport with the important principles discussed above regarding de novo review of rulings on pleas to the jurisdiction when standing is implicated, the trial court's inability to sustain a plea to the jurisdiction

---

[10] We conclude that this statutory construction is unreasonable for the reasons stated above. We do not do so because we are uncomfortable with the possibility of the trial court acting as factfinder regarding standing under this statute or because appellate review under such a construction would be awkward.

if there is a fact issue regarding the jurisdictional issue, and respect for the petitioner's invocation of the right to a jury trial on issues regarding appointment of the petitioner as sole managing conservator. *See* Tex. Const. art. 1, § 15; Tex. Fam. Code Ann. § 105.002(a),(b); Tex. R. Civ. P. 216; *Miranda*, 133 S.W.3d at 227–28; *Sewell*, 2013 WL 3326798, at *3–4; *In re Reiter*, 404 S.W.3d at 609. For these reasons, we conclude that section 102.004(a) is unambiguous and yields only one reasonable interpretation. *See Iliff*, 339 S.W.3d at 79. Under this interpretation, for a grandparent, or other relative of the child related within the third degree by consanguinity, to have standing under section 102.004(a)(1), the evidence submitted regarding the standing issue, when considered in the light most favorable to the petitioner, must enable reasonable and fair-minded people to find that the order requested is necessary because the child's circumstances on the date suit was filed would significantly impair the child's physical health or emotional development. *See* Tex. Fam. Code Ann. § 102.004; *Mayes*, 236 S.W.3d at 755 (Tex. 2007).

**B.     Did the trial court err in concluding that the grandparent lacked standing under section 102.004(a)(1)?**

Applying this legal standard, we conduct a de novo review to determine whether the record evidence submitted regarding the standing issue, considered in the light most favorable to the Grandmother, would enable reasonable and fair-minded people to find that the order requested is necessary because the Child's circumstances on the date suit was filed (February 2, 2012) would significantly impair the Child's physical health or emotional development. *See* Tex. Fam. Code Ann. § 102.004; *Mayes*, 236 S.W.3d at 755 (Tex. 2007).

13

The record contains an affidavit in which the Grandmother testifies to the following:

- The Department had been contacted due to the Mother's drug use.

- On October 10, 2011, the Department, the Grandmother, the Mother, and the Father signed a plan for the Child's safety.

- The Department wanted the Mother and the Father to submit themselves to drug testing and meet other conditions.

- The Mother and the Father moved in with the Grandmother on October 10, 2011, when the Child began living with the Grandmother.

- The parents' lack of care and concern for the Child was the Grandmother's immediate concern. Rarely would the Mother hold or feed the Child. When the Mother did hold the Child, it was as if the Child was a foreign object.

- From the day they moved into the Grandmother's house, the Mother and Father had long extended absences away from the Child. Rarely would the parents check on the Child throughout the day. When the parents, particularly the Mother, were at home with the Child, they rarely would hold or care for the Child.

- Initially the Child's parents lived with the Grandmother; however, the Father refused to stop drinking and soon was asked to leave the Grandmother's home. The Mother soon followed him. Once out of the Grandmother's home, the parents sporadically visited the Child and only rarely called to inquire about the Child. At one point, the parents did not visit or call for 22 days. Most of the time, the calls were made by the Father.

- Between the time the Child's parents left the Grandmother's home and the time the Department returned the Child to the Mother, the parents had spent a total of 41 hours with the Child.

- The Grandmother was concerned about the parents' lack of care for the Child, but the Grandmother made every effort to ensure that the parents bonded with the Child.

- In the Grandmother's opinion, the parents' interest in the Child relates to the pecuniary benefits the Child represents rather than the well-being of the Child. The Grandmother is scared that the Child will be subjected to neglect and injury if a third party is not present.

- The Mother has been charged with endangering a child three times and

convicted of the offense once. The Mother is a drug-and-alcohol abuser and has been charged and convicted of driving while intoxicated twice.

- The Mother has had five children who have been placed with the Department between 2008 and 2011.
- The Father was incarcerated at the time of the Grandmother's affidavit. He, too, has a history of alcohol and drug abuse.
- The Grandmother believed that the Child's parents would endanger the Child's physical or emotional welfare.[11]

The record also contains certified copies of the Mother's two DWI convictions and one child-endangerment conviction.[12]

At an evidentiary hearing on the Mother's plea to the jurisdiction, the Grandmother testified to the following additional facts:

- In October 2011, the Department had placed the Child in the Grandmother's care when the Child was five days old because the Mother had tested positive for marijuana while pregnant with the Child.
- The Child's parents moved into the Grandmother's home at that time. For about nine days thereafter, both parents left the Child in the Grandmother's care for as many as eleven hours a day as they searched for an apartment.
- On one occasion, the Father, who had consumed alcohol, and the

---

[11] In her appellant's brief, the Grandmother asserted many of the facts contained in her affidavit. In this section of her brief, she also asserted that the parents would fight violently and loudly in her home. On one occasion, the Mother kept the Child in the middle of a violent argument, swinging and shaking the Child around. The Mother and the Father have not filed an appellate brief and thus have not contradicted these facts; therefore, this court accepts these facts as true. *See* Tex. R. App. P. 38.1(g). Even though we accept these facts as true on appeal, we still must examine the record to determine if it contains evidence that, when considered in the light most favorable to the petitioner, would enable reasonable and fair-minded people to find that the order requested is necessary because the Child's circumstances on the date suit was filed would significantly impair the Child's physical health or emotional development.

[12] The conviction for endangering a child occurred before the Child was born, so the child endangered was not the Child.

Mother, who was holding the Child, had an argument in the Grandmother's home. Each parent was screaming and cursing at the other. The Mother refused to give the Grandmother the Child after the Grandmother asked her to do so.

- The Grandmother was concerned during this incident because the Father was very angry and each parent made threatening motions toward the other. According to the Grandmother, the Child's legs were "swinging like crazy" and "they were shaking the baby around," but the Child was not hurt. The Grandmother was concerned that the Mother would allow a two-week old baby to be in the middle of an extremely volatile and possibly violent situation.

- Following this incident, the Grandmother asked the Father to leave the Grandmother's home and he complied. The Mother left two days later.

- The Child remained in the Grandmother's care for several months until the Department returned the Child to the Mother's care on February 2, 2012, the same day the Grandmother filed her original petition in this case.

The Mother and the Father appeared at the evidentiary hearing and represented themselves. Though they made legal arguments, neither parent presented any evidence.

Under a de novo review, we conclude that, considering the record evidence in the light most favorable to the Grandmother, the evidence submitted regarding the standing issue would enable reasonable and fair-minded people to find that the order the Grandmother requested (to be named sole managing conservator of the Child) is necessary because the Child's circumstances on the date suit was filed (February 2, 2012) would significantly impair the Child's physical health or emotional development.[13] *See* Tex. Fam. Code Ann. § 102.004(a)(1). Thus, the trial court erred in sustaining the plea to the jurisdiction and dismissing the

---

[13] This determination does not mean that the Grandmother has rebutted the parental presumption or proved her case at the trial on the merits. Rather, we merely conclude that the Grandmother has standing under section 102.004(a)(1) to bring the suit.

16

Grandmother's suit for lack of standing. Accordingly, we sustain the Grandmother's sole appellate issue.

## IV. CONCLUSION

Under the applicable legal standard, the record contains the proof necessary for the Grandmother to have standing under section 102.004(a)(1). Because the trial court erred in dismissing the Grandmother's suit for lack of standing, we reverse the trial court's judgment, and remand for further proceedings consistent with this opinion.

/s/ Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Boyce and Jamison. (Jamison, J., dissenting).