**Motion For Rehearing Granted; Memorandum Opinion of July 1, 2014, Withdrawn; Affirmed in Part and Reversed and Remanded in Part and Substitute Memorandum Opinion filed July 15, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00071-CV

---

## IN THE INTEREST OF A.T., A MINOR CHILD

---

**On Appeal from the 246th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-38393**

---

## S U B S T I T U T E   M E M O R A N D U M   O P I N I O N

We grant the motion for rehearing filed by the Department of Family and Protective Services (the "Department"). We withdraw the memorandum opinion issued in this case on July 1, 2014, and we issue this substitute memorandum opinion in its place.

Troy J. Wilson and Georgette George-Wilson appeal the trial court's final decree terminating the parental rights of minor child A.T.'s parents and appointing the Department as sole managing conservator of A.T. The Wilsons argue on

appeal that the trial court (1) abused its discretion in striking their petition to intervene because they had standing to intervene under Texas Family Code sections 102.003(a)(10) and 102.004(b); (2) erred in terminating the parental rights of A.T.'s father because there was legally insufficient evidence to terminate his rights under the clear and convincing evidence standard; and (3) abused its discretion in granting the Department an extension of the legislatively prescribed dismissal date in violation of Texas Family Code section 262.201. We reverse the trial court's judgment with respect to the appointment of the Department of Family and Prospective Services as sole managing conservator and remand this cause for further proceedings consistent with this opinion. We affirm the trial court's judgment with respect to establishment of paternity and termination of parental rights.

## BACKGROUND

A.T.'s parents are F.L.T. ("Mother") and D.H. ("Father"). A.T. remained in the hospital for several weeks after her birth on June 20, 2012, because she was "born with bleeding in her brain and has a hole in her heart." The Department filed an original petition for protection of a child, for conservatorship, and for termination in a suit affecting the parent-child relationship on July 5, 2012. Mother's parental rights to several other children previously had been terminated "due to non-compliance with medications and refusal to cooperate with [the Department]." Mother has a history of schizophrenia and depression.

The trial court signed an order on July 11, 2012, setting a hearing on the Department's request for temporary orders and appointing an attorney ad litem, Wendy Prater ("Ad Litem Prater"), to represent A.T. The trial court designated the Department as temporary managing conservator of A.T. after a hearing on August 2, 2012. Mother was notified of the hearing but did not appear. Father was not

2

notified of the hearing and did not appear. In the order, the trial court stated the date of dismissal was July 22, 2013, and set a status hearing for September 13, 2012.

A.T. was released from the hospital on August 15, 2012, and the Department placed her with foster parents, Troy J. Wilson and Georgette George-Wilson. The Wilsons already were foster parents to A.T.'s older sister.

The Department filed a family service plan for Mother and Father with the trial court on September 11, 2012; that same day, the Department also filed a status report with the court.

The trial court held a status hearing on September 13, 2012. The Department attorney and Ad Litem Prater appeared. Mother and Father were notified of the hearing but did not appear. The trial court approved the Department's family service plan for Mother and Father, and set a permanency hearing for January 10, 2013.

The Wilsons filed a petition to intervene on November 1, 2012; they asserted standing on grounds that (1) "they have had substantial contact with the minor child since she was less than two months old and a return of the child to the biological mother would result in detriment to the emotional and/or physical development;" and (2) both Mother and Father "have or will execute an Affidavit of Relinquishment naming interveners as prospective adoptive parents and joint managing conservators of the child." The Wilsons sought termination of Mother's and Father's parental rights based on affidavits of relinquishment, and sought to adopt A.T.[1]

---

[1] The record contains an affidavit for voluntary relinquishment that was signed by Mother on October 29, 2012, and filed in the trial court on January 10, 2013. The record contains an affidavit for voluntary relinquishment that was signed by Father on June 27, 2013, and filed in

3

The Department filed a permanency plan and progress report in the trial court on December 20, 2012, in which it stated that the primary permanency goal was unrelated adoption and that the foster parents are "willing to adopt the child." The trial court held a permanency hearing on January 10, 2013. The Department's attorney, case worker Courtney Wilson, and Ad Litem Prater appeared at the hearing. Mother and Father were notified of the hearing but did not appear. It was noted on the January 10, 2013 order that Mother signed an affidavit of relinquishment on October 29, 2012, which was filed on January 10, 2013.[2] The trial court set a permanency hearing for March 28, 2013.

The Department removed A.T. and her older sister from the Wilsons' home on January 21, 2013, because of allegations of neglect; Georgette acknowledged that she had left A.T. and her older sister unattended. A.T. and her sister were placed with another foster family.

The Department filed a permanency plan and progress report in the trial court on March 6, 2013, in which it stated that the primary permanency goal was unrelated adoption but it did not name any prospective adoptive parents. The report also stated that Father was in Harris County jail. The trial court signed a permanency hearing order on March 28, 2013, setting the next permanency hearing for June 27, 2013. The order stated that the Department attorney, case worker Courtney Wilson, and Ad Litem Prater appeared at the hearing; the order did not mention Mother and stated that Father did not appear at the hearing although he

_____

the trial court on June 28, 2013.

[2] In the affidavit, Mother stated: "I understand that the Texas Department of Family and Protective Services (DFPS) has been appointed Temporary Managing Conservator of my child and I designate DFPS along with Troy J. Wilson and Georgette George-Wilson, the prospective adoptive parents, as joint managing conservators of the child. I give my consent for DFPS to place my child with Troy J. Wilson and Georgette George-Wilson for adoption. In the event, Troy J. Wilson and Georgette George-Wilson decide not to adopt my child, I give my consent for DFPS to place my child with another competent family for adoption."

4

was notified. The trial court also signed an order for DNA testing of Father at the Harris County jail.

The Wilsons filed an original motion to modify temporary orders for conservatorship on June 27, 2013, "request[ing] that the court appoint them temporary, and later, permanent managing conservators of the child which they assert is in the best interest of the child." The Wilsons stated in their motion that it is in the "best interest of [A.T.] that they be appointed sole managing conservators of the minor child the subject of this suit and represent that they are prepared to file a petition for adoption and have filed a petition to adopt [A.T.]'s sibling."

The trial court held a permanency hearing on June 27, 2013, at which the Department attorney, case worker Courtney Wilson, Ad Litem Prater, and the Wilsons appeared; Mother and Father did not appear. The Department informed the court that (1) DNA testing confirmed the paternity of Father; (2) DNA results were filed in the trial court; (3) Father was notified of the paternity results at Harris County jail; and (4) Father had been released from jail. The trial court appointed attorney Robert Johnson to represent Father. After hearing the case worker's testimony about A.T.'s well-being, the court approved the continued placement of A.T. with foster parents; set the case for a permanency hearing and trial on July 18, 2013; and signed an order appointing Robert Johnson as attorney ad litem for Father.

On July 12, 2013, the Wilsons as "intervenors" filed a motion to dismiss the Department from the underlying case on grounds that (1) Rule 245 requires 45-day-notice of a trial setting; (2) the case had been pending for almost a year and no 45-day-notice had been given to the parties; (3) there are no extraordinary circumstances in that all of the parties had been known for at least 6 months; (4) the failure of the Department to get a trial setting and give 45 days notice are not

5

grounds for granting an extension; (5) "intervenors" ask the Department be dismissed from the case; and (6) Mother and Father have executed affidavits of relinquishment in favor of "intervenors" and were going to "execute necessary papers maintaining them as managing conservators" of the child.

The Wilsons filed an amended petition to intervene on July 15, 2013, in which they sought permanent joint managing conservatorship of A.T. in addition to termination of the parental rights of A.T.'s biological parents and adoption of A.T.[3]

Father filed a general denial in response to the Department's petition in a suit affecting the parent-child relationship on July 16, 2013. Father filed a motion for continuance on July 17, 2013, arguing that he "needs additional time to complete Service Plan and to confer with his attorney."

On July 18, 2013, the Wilsons as intervenors filed their objection to the July 18, 2013 trial setting, stating that (1) their interests and the Department's interests were no longer aligned; (2) intervenors and the Department both seek to become managing conservator of the child; (3) intervenors have no confidence the Department will protect their interests, which was the reason for the intervention; (4) Rule 245 mandates 45 days notice of trial to all parties in a contested matter; (5) the matter was not set for trial until June 27, 2013, giving the parties only 21 days notice of the July 18, 2013 trial setting; and (6) intervenors do not agree to waive the 45-day-notice requirement.

---

[3] In its brief, the Department acknowledges that the "controlling petition" for purposes of this appeal is the amended petition to intervene filed on July 15, 2013. The amended petition to intervene does not appear in the clerk's record. A copy is attached to the Department's brief; no party disputes the propriety of referencing the amended petition to intervene or the accuracy of the copy attached to the Department's brief. This court has asked for the clerk's record to be supplemented; in the interest of time due to the deadline for deciding this appeal, we will reference the copy attached to the Department's brief pending supplementation of the clerk's record.

On July 18, 2013, the Department, through its attorney and case worker Courtney Wilson, Ad Litem Prater, Father's attorney, the Wilsons as intervenors,[4] and the Wilsons' attorney Brendetta Scott appeared in the trial court for the first trial setting. After the trial court swore in all the present witnesses, Troy Wilson stated: "I would invoke the Rule." The trial court then asked how Troy had standing as an intervenor. Troy responded that he had been an intervenor since November 1, 2012; had substantial contacts with A.T. at the time; and had worked with the Department "hand in hand" at the time.

The trial court proceeded to hear Father's motion for continuance. Father's attorney stated that he (1) needed additional time to confer with his client; (2) had concerns about the affidavit of relinquishment signed by Father on June 27, 2013; and (3) wanted to make sure Father understood what he had signed because he did not give Father the relinquishment form. Ad Litem Prater agreed to the continuance because the affidavit was signed at 12:30, the same day Father's counsel was appointed, and the form was "definitely" not presented to Father by his appointed counsel.

The trial court then asked Troy: "[W]hether or not you have standing, what's your position?" Troy responded that he opposed Father's motion for continuance because he and Father's attorney had visited Father on July 17, 2013; Father's attorney "went through the affidavit" with Father, "asked him all the pertinent questions," and Father stated that he relinquished his parental rights voluntarily. The trial court then disqualified Troy because he was testifying to facts. The trial court next asked Troy's attorney for her position on Father's motion for continuance. Troy's attorney asked to call Troy to the stand but the

_____

[4] Troy Wilson stated in court that he was the intervenor and co-counsel, that he would be arguing on July 18, 2013, and that his co-counsel Brendetta Scott would be arguing "from henceforth."

trial court stated: "No, ma'am. I want to know. Well, anyway, it's granted. Go get a mandamus." Thereafter, the following exchange occurred:

> THE DEPARTMENT: Well, Your Honor, if we grant the continuance which . . .
>
> THE COURT: I already granted it.
>
> THE DEPARTMENT: Yes, Your Honor. We need an extension.
>
> THE COURT: The extension is granted.
>
> TROY WILSON: Okay. Your Honor, let the record show that we — we object to the extension.
>
> THE COURT: Let the record reflect that you told me you were an attorney. You're representing yourself. And now you're telling me about facts. And as I understand the Rules of Ethics and the law, if you're a witness, you can't be the attorney. And that would be my ruling with regard to your position at this time.
>
> TROY WILSON: Well, Your Honor, I misunderstood what you were asking me. You asked me why did I oppose it.
>
> THE COURT: Anyway, I'm granting the continuance and the extension.
>
> THE WILSONS' COUNSEL: Your Honor, we object to the extension.
>
> THE COURT: I understand, you object.
>
>             *               *               *
>
> THE COURT: Okay. So, the extension of the dismissal date is granted for February 3rd, 2014. Trial date [is] September 19, 2013. And the reason for the continuance is, dad, who is relinquishing or reconsidering relinquishing his rights has not had an attorney except since June 27th. So, he's not ready for trial. Okay.

The trial court signed an order retaining the suit on the court's docket and setting the new dismissal date for February 3, 2014.

On July 18, 2013, the Wilsons as intervenors also filed their objection to any extension sought by the Department or any other party, arguing that (1) no extraordinary circumstances warranting an extension exist; (2) each party had been

8

served for no fewer than 10 months and the Department has known of the whereabouts of each party; (3) equity does not bail out those who sit on their hands, and an extension would reward the Department for failing to carry out its obligations; (4) no service plan had been set up for the parents; (5) the Department did not seek DNA testing of Father until the end of March 2013, despite having him served in early September 2012; (6) the Department did not obtain an affidavit of relinquishment from either parent and was "content to move at a snail's pace;" and (7) despite having terminated the parent-child relationship for six children of Mother and alleging that Mother suffered from mental instability, the Department never sought to have an attorney appointed for Mother.

On August 1, 2013, the trial court allowed Father's attorney to withdraw from the case and appointed a new attorney ad litem for Father.

Ad Litem Prater filed a motion to strike the Wilsons as intervenors and their pleadings on October 16, 2013, arguing that the Wilsons (1) failed to ask for leave from the trial court to intervene in this case pursuant to Texas Family Code Section 102.004 despite having "plenty of time to follow the procedure;" and (2) did not have substantial past contact because A.T. had only been in the Wilsons' care for five months from August 15, 2012 to January 22, 2013, and the Wilsons did not have contact with A.T. from January 22, 2013 to October 16, 2013.

The Wilsons as intervenors filed their response to the motion to strike on October 23, 2013. The Wilsons first argued that Ad Litem Prater should not be permitted to challenge the Wilsons' intervention because she has "never asserted until now that she did not receive the Intervention filed on or about November 1, 2012 or the Amended Intervention filed on or about July 12, 2013" despite appearing at several hearings and trial settings at which the Wilsons were present and raised issues as intervenors. Second, they contended that the "substantive

9

contact required by the Texas Family Code is not determined at the time of trial but at the time of filing;" Ad Litem Prater "does not allege that there was not substantive contact at the time of filing;" and they maintained "substantive contact" even after A.T. was removed from their care. Third, the Wilsons contended that Ad Litem Prater was served with the original and amended petition to intervene, and the Wilsons were named by Mother and Father as managing conservators in their respective affidavits of relinquishment.

The Department attorney, case worker Courtney Wilson, Ad Litem Prater, the Father's attorney, the Wilsons as intervenors, and the Wilsons' attorney Brendetta Scott appeared in the trial court at the third trial setting on October 24, 2013. Ad Litem Prater announced that she had a "Motion to Strike Intervenor. That's set for today as well. That should be heard prior to trial, please." Ad Litem Prater also argued that the trial court could strike the Wilsons on the day of trial because "they haven't asked for leave to ever intervene."

The Wilsons contended that the trial court already had granted them leave as intervenors at the July 18, 2013 hearing, and that they had substantial contact with A.T. The trial court then stated: "Well, I think that's a matter of proof. So, let's have a hearing on intervention. Yes. All right. Everybody has been sworn. Who wants to testify?"

Ad Litem Prater proceeded to argue that she never received a copy of the Wilsons' petition to intervene of November 1, 2012, and that she found out about the Wilsons' intervention when an amended intervention was filed in July 2013. She also argued that A.T. was in the Wilsons' care for five months until A.T. was removed from their home in January 2013, and the Wilsons had had no contact with A.T. after the removal.

Case worker Courtney Wilson testified at the hearing that A.T. had been

10

placed in the Wilsons' care from August 2012 to January 21, 2013. She testified that A.T. was removed because there were "some marital issues between the Wilsons" and there was an investigation "due to neglectful supervision." According to the case worker, the Wilsons were not allowed to have any contact with A.T. after A.T. was placed with another foster family; the Department never intended for A.T. to be returned to the Wilsons or to be adopted by the Wilsons.

Troy testified that he did not see A.T. in person after she was removed from the Wilsons' home, but his wife visited with A.T. at least once a month; according to Troy, he saw A.T. through videotapes his wife brought back from visits with A.T. Troy claimed to have had regular telephone contact with A.T. but could not quantify the telephone contact. Troy testified that he purchased clothes, foods, toys, and anything A.T.'s new foster mother requested. Troy also testified that he filed the Wilsons' petition to intervene on November 1, 2012, and then faxed it to Ad Litem Prater, the Department, the case worker, and the Father's attorney on November 2, 2012. At that time, A.T. still was in the Wilsons' care.

The trial court interjected that Troy "filed the Intervention, and probably had standing at that time." The trial court also stated: "I think you have to prove standing today. He undoubtedly — I don't know about undoubtedly — conceivably had standing from August 2012 to January 22nd, 2013. I don't make that finding, but I would say probably, prima facie or something because you had the child in your home. . . . But not since January 22nd, 2013 unless you can establish that today. . . . I think that's where we are."

Troy testified that, when he asked for visitation of A.T. at the end of January 2013, the Department said he could not have visitation with A.T. because of "[i]ntake concerns." Troy acknowledged that he had to give up his foster license in January 2013. He testified that the Department knew his wife had visitations with

11

A.T. and was "positive" the Department set up her visits.

Georgette Wilson testified that she had visitations with A.T. "two to three times a month" until August 15, 2013, and that the Department did not object to visitations; she acknowledged that the Department never gave her permission to visit A.T. or set up visitation times after A.T. was removed from her home.[5] Georgette testified that she had contact with A.T.'s current foster parent and provided food, clothes, toys, and anything the foster parent said A.T. needed. Georgette stated that she held, played, and bonded with A.T. during visitations, which usually lasted between 20 and 30 minutes. Georgette also stated that she talked to A.T. once a week on the telephone even though A.T. was only one year old.

Georgette claimed that she had frequent communications with the case worker, and that the case worker updated her on A.T.'s well-being and progress. According to Georgette, she believed that she still would be able to adopt A.T. after the Department removed A.T. from her home because the Department (1) told her she could adopt A.T. if she divorced Troy; and (2) gave her instructions in that regard. She testified that she filed for divorce from Troy after the Department gave her instructions, but she nonsuited the divorce once she "realized [she] wasn't going to get [A.T.] back." She testified that she got an apartment; filed for divorce; and went to parenting classes, anger management classes, and therapy.

After hearing the witnesses' testimony, the trial court ruled: "Regrettably, Mr. and Ms. Wilson, the Court finds you do not have standing. So, the Intervention is stricken. Sorry." The trial court then recessed the trial on

_____

[5] Georgette denied that the Department removed A.T. "due to accusations of abuse and neglect" but claimed that she "asked for respite" for a weekend. Georgette explained: "My understanding of respite is something that is entitled to us if we needed a break, a weekend, day or two, whatever it was."

12

termination of Father's and Mother's parental rights.

The trial on termination resumed on November 21, 2013. After hearing evidence, the trial court granted termination of Mother's and Father's parental rights and appointed the Department as managing conservator. The trial court signed a final decree of termination of Mother's and Father's parental rights on December 12, 2013. In the decree, the trial court appointed the Department as sole managing conservator of A.T.

The Wilsons filed a notice of appeal on January 3, 2014. The Wilsons filed a motion for new trial on January 10, 2014, which was overruled by operation of law. In their motion, the Wilsons argued that the trial court erred in striking them as intervenors because (1) their petition for intervention had been on file for 51 weeks; (2) Ad Litem Prater in fact received notice of the Wilsons' November 1, 2012 petition to intervene; (3) the trial court acknowledged the Wilsons had substantial contact with A.T. at the time they filed their petition to intervene and "facts on that particular date are what determines whether or not there exists substantial past conduct;" and (4) "they had been named as the managing conservator and prospective adoptive parents" by Mother and Father in unrevoked affidavits of relinquishment.

The Wilsons filed an amended notice of appeal on January 17, 2014.

**ANALYSIS**

The Wilsons argue in their first issue that the trial court abused its discretion when it struck their petition to intervene in a suit affecting the parent-child relationship the Department filed on July 5, 2012. The Wilsons argue that the trial court should not have struck their petition because they asserted "standing to intervene based on the fact that they had substantial contacts" with A.T. pursuant

13

to Texas Family Code section 102.004(b), and were named as conservators in Mother's and Father's affidavits of relinquishment pursuant to Texas Family Code section 102.003(a)(10).

## I.     Standard of Review

The inquiry here focuses on the statutory prerequisites for standing established by the Texas Legislature in this particular context. *See In re S.A.M.*, 321 S.W.3d 785, 788 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *see also In re K.D.H.*, 426 S.W.3d 879, 883 (Tex. App.—Houston [14th Dist.] 2014, no pet.). A trial court's standing determination is reviewed *de novo*. *In re S.A.M.*, 321 S.W.3d at 788. When, as in this case, the trial court does not make separate findings of fact and conclusions of law, we imply that the trial court made all necessary findings and we will uphold the trial court's decision on any legal theory supported by the evidence. *In re J.C.*, 346 S.W.3d 189, 193 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see also Mauldin v. Clements*, 428 S.W.3d 247, 262 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *In re S.M.D.*, 329 S.W.3d 8, 13 (Tex. App.—San Antonio 2010, pet. dism'd). We review the entire record to determine if the trial court's implied findings are supported by any evidence. *Mauldin*, 428 S.W.3d at 263; *In re S.M.D.*, 329 S.W.3d at 13. We may not consider a trial court's oral comments at the hearing or at rendition as a substitute for findings of fact and conclusions of law. *In re W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984) (per curiam); *In re J.C.*, 346 S.W.3d at 193.

When standing has been conferred by statute, the statute itself serves as the proper framework for a standing analysis. *In re K.D.H.*, 426 S.W.3d at 883; *In re S.M.D.*, 329 S.W.3d at 12; *see In re S.A.M.*, 321 S.W.3d at 788. "In the context of a suit affecting the parent-child relationship, standing is governed by the Texas Family Code, and '[t]he party seeking relief must allege and establish standing

within the parameters of the language used in the statute.'" *In re S.M.D.*, 329 S.W.3d at 12-13 (quoting *In re H.G.*, 267 S.W.3d 120, 124 (Tex. App.—San Antonio 2008, pet. denied)); *see also In re K.D.H.*, 426 S.W.3d at 883-85; *In re S.A.M.*, 321 S.W.3d at 788.

Contrary to the trial court's statement that the Wilsons were required to prove standing at the time of the intervention hearing, the question is whether the facts establishing standing existed at the time the petition was filed in the trial court. *See Mauldin*, 428 S.W.3d at 263; *In re S.M.D.*, 329 S.W.3d at 13, 16; *see also In re H.B.N.S.*, Nos. 14-05-00410-CV, 14-05-00102-CV, 2007 WL 2034913, at *3-4 (Tex. App.—Houston [14th Dist.] July 17, 2007, pet. denied) (mem. op.) (Standing to intervene is measured at the time the intervention is filed.).

## II. Intervention Based on Texas Family Code Section 102.004(b)

We first address the Wilsons' argument that the trial court erred in striking their petition to intervene for lack of standing under section 102.004(b). *See* Tex. Fam. Code Ann. § 102.004(b) (Vernon 2014). The Wilsons argue that the evidence establishes they had substantial past contact with A.T. when they filed their petition to intervene, and that standing to intervene should be measured when the intervention is filed. The Wilsons argue that they had "consistent contact" with A.T. even after A.T. was removed from their home; they also contend that the "'substantial contact' required by the statute does not require actual possession and control of the child."

The Department responds that the trial court properly struck the Wilsons' petition to intervene because section 102.004(b) requires leave to intervene in a pending suit affecting the parent-child relationship, and the Wilsons failed to obtain leave. The Department also contends that "the Wilsons failed to overcome the challenge to the Wilsons' standing" at the hearing on intervention when they

15

failed to request permission to intervene and failed to present sufficient evidence of substantial past contact.

Before we address whether the Wilsons established standing under section 102.004(b), we will consider the Department's assertion that section 102.004(b) required the Wilsons to request leave to intervene, and that the Wilsons failed to request leave in this case.

Section 102.004(b) provides: "[T]he court may grant a grandparent or other person deemed by the court to have had substantial past contact with the child leave to intervene in a pending suit filed by a person authorized to do so under this subchapter if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development." *Id*.

In interpreting a statute, we determine and give effect to the legislature's intent from the plain and common meaning of the statute. *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008); *In re K.D.H.*, 426 S.W.3d at 884. We must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous. *Columbia Med. Ctr.*, 271 S.W.3d at 256.

Based on section 102.004(b)'s plain language, we conclude that a person is required to ask the trial court for leave in order to intervene under section 102.004(b) in a suit affecting the parent-child relationship; a contrary conclusion impermissibly would render meaningless the words "the court may grant . . . leave to intervene." The Wilsons therefore were required to request leave to intervene in the pending suit affecting the parent-child relationship. *See L.J. v. Tex. Dep't of Family & Protective Servs.*, No. 03–11–00435–CV, 2012 WL 3155760, at *8 (Tex. App.—Austin Aug. 1, 2012, pet. denied) (mem. op.) (The legislature promulgated a separate provision governing interventions in family law cases that explicitly sets

16

out the circumstances under which a non-parent may ask a trial court's permission to intervene in a suit affecting a parent-child relationship; therefore, Texas Rule of Civil Procedure Rule 60 has no applicability in interventions under section 102.004(b)); *Oehlerich v. Tex. Dep't of Protective & Regulatory Servs.*, No. 03–98–00309–CV, 1999 WL 546970, at \*2 n.3 (Tex. App.—Austin July 29, 1999, no pet.) (not designated for publication) (In a case considering intervention pursuant to section 102.004(b), the court noted that "[b]efore 1995, [] intervention was governed by Texas Rule of Civil Procedure 60, which did not require leave of court to intervene and placed the burden of proof on the party moving to strike the intervention 'for sufficient cause.'").[6]

We reject the Department's assertion that the Wilsons never requested leave to intervene. The Wilsons' amended petition to intervene reasonably can be read as a request for leave to intervene. The petition (1) alleges that the Wilsons are foster parents and have standing to intervene "because they have had substantial contact with [A.T.] since she was less than two months old and a return of [A.T.] to the biological mother would result in detriment to the emotional and/ or physical development and both the mother and father of the child have executed an Affidavit of Relinquishment naming interveners as prospective adoptive parents and either sole or joint managing conservators of the child intervention;" (2) seeks

---

[6] We see no tension between this holding and the passing reference to Rule 60 in *Mauldin*, 428 S.W.3d at 262. After noting Rule 60, the court went on to apply intervention procedures under section 102.004(b) that are consistent with requiring the party seeking intervention to establish a basis for standing even in the absence of a motion to strike. *Id.* We likewise see no tension between this holding and the discussion of Rule 60 in *Seale v. Tex. Dep't of Family & Protective Servs.*, No. 01-10-00440-CV, 2011 WL 765886, at \*2-3 (Tex. App.—Houston [1st Dist.] Mar. 3, 2011, no pet.) (mem. op.). Rule 60 was applied in *Searle* because "[a]ll parties agreed that Texas Rule of Civil Procedure 60 governs the intervention procedure in this case." *Id.* *Seale* appropriately refrained from addressing a legal issue regarding the mechanics of intervention procedure that was not presented to it based on the parties' briefing in that case. *See id.*

17

termination of Mother's and Father's parental rights, appointment of the Wilsons as permanent joint managing conservators of A.T., and adoption of A.T.; and (3) concludes by stating that the Wilsons "ask[] this court to grant the relief requested in this intervention."

The trial court reasonably could have viewed the Wilsons' petition to intervene as a request for leave to intervene as contemplated by section 102.004(b). However, the trial court never granted the Wilsons leave to intervene; instead, it struck their petition for lack of standing at the October 24, 2013 "hearing on intervention." We therefore consider next whether standing to intervene under section 102.004(b) was established on this record. If the prerequisites for standing under section 102.004(b) were satisfied, then the trial court had discretion to allow the Wilsons to intervene in the pending suit affecting the parent-child relationship. *See* Tex. Fam. Code Ann. § 102.004(b); *L.J.*, 2012 WL 3155760, at *7; *In re S.M.D.*, 329 S.W.3d at 14; *In re H.B.N.S.*, 2007 WL 2034913, at *3-4.

In addressing whether the prerequisites under section 102.004(b) were satisfied, we look for guidance to the discussion of section 102.004(a) in *In re K.D.H.*, 426 S.W.3d at 884. We do so because sections 102.004(a) and 102.004(b) both contain unique statutory language conditioning the ability to intervene on the proffer of "satisfactory proof to the court" concerning particular intervention requirements.

"Ordinarily, standing is based on the existence of certain facts, not the existence of certain proof." *In re K.D.H.*, 426 S.W.3d at 884. "Section 102.004(a) is an unusual provision because, in it, the Texas Legislature confers standing on certain [persons] based on the existence of proof rather than the existence of facts." *Id.* This observation applies with equal force to intervention under section 102.004(b).

18

Thus, to establish standing to intervene in a pending suit under section 102.004(b), the legislature requires a person to (1) demonstrate "substantial past contact with the child;" and (2) provide "satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development." *See* Tex. Fam. Code Ann. § 102.004(b); *L.J.*, 2012 WL 3155760, at *7; *In re S.M.D.*, 329 S.W.3d at 14. Under section 102.004(b), as in section 102.004(a), the trial court acts as a gatekeeper in assuring that "satisfactory proof" exists. *See In re K.D.H.*, 426 S.W.3d at 885.

After the trial court announced "let's have a hearing on intervention," the Wilsons had the burden of providing proof that they had substantial past contact with A.T.; they also had the burden of providing "satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair [A.T.]'s physical health or emotional development." *See* Tex. Fam. Code Ann. § 102.004(b); *L.J.*, 2012 WL 3155760, at *7; *In re S.M.D.*, 329 S.W.3d at 14-15; *see also In re K.D.H.*, 426 S.W.3d at 885.

At the October 24, 2013 intervention hearing, the Wilsons, Ad Litem Prater, and the Department presented their respective arguments regarding whether the Wilsons had standing to intervene as alleged in their petition. The trial court heard evidence presented by the Wilsons, Ad Litem Prater, and the Department addressing whether the Wilsons had substantial past contact with A.T. The Wilsons presented evidence that they had substantial past contact with A.T. at the time they filed their petition to intervene on November 1, 2012 because A.T. had lived in their home from August 2012 to January 2013. The Department and Ad Litem Prater presented evidence that there was essentially no contact between Troy

19

and A.T. — and very little contact between Georgette and A.T. — after A.T. was removed from the Wilsons' home in January 2013. The evidence presented at the evidentiary hearing on intervention did not address whether appointment of Mother or Father as managing conservator would "significantly impair the child's physical health or emotional development" at the time the Wilsons' filed their petition to intervene or at any other time.

Even assuming that the hearing record contains evidence establishing that the Wilsons had substantial past contact with A.T. as required by section 102.004(b), we cannot conclude that the Wilsons met their burden to establish "satisfactory proof" that appointment of A.T.'s Mother or Father as managing conservator would "significantly impair [A.T.]'s physical health or emotional development" as required by section 102.004(b). Therefore, we have no basis to disturb the trial court's denial of leave to intervene and striking of the petition to intervene under section 102.004(b). We overrule the Wilsons' first issue in that respect.

## III.  Intervention Based on Texas Family Code Section 102.003(a)(10)

We next address the Wilsons' argument that the trial court "abused its discretion" in striking their petition to intervene because they had an independent basis for standing under section 102.003(a)(10) sufficient to allow intervention. *See* Tex. Fam. Code Ann. § 102.003(a)(10) (Vernon 2014).

According to the Wilsons, and as alleged in their amended petition in intervention, they had standing to bring an original suit pursuant to section 102.003(a)(10) after being named managing conservators in Mother's and Father's affidavits of relinquishment. The Wilsons argue that intervention is permitted for a person who could have brought the original suit; they further contend that they "met the requirements of the rule in that they were named as managing

conservator[s]" in the relinquishment affidavits signed by Mother and Father.

Section 102.003(a)(10) provides that an original suit may be filed at any time by "a person designated as the managing conservator in a revoked or unrevoked affidavit of relinquishment under Chapter 161 or to whom consent to adoption has been given in writing under Chapter 162." *Id.*

The Wilsons did not assert standing by filing an original suit under section 102.003(a)(10). Instead, the Wilsons asserted standing by invoking section 102.003(a)(10) as a basis for their request to intervene. Although section 102.003 sets forth the statutory standing bases for filing an original suit rather than intervening, we cannot conclude that a person who satisfies the statutory standing requirements to file an original suit is nonetheless foreclosed from intervening. *See In re S.B.,* No. 02-11-00081-CV, 2011 WL 856963, at \*2-3 (Tex. App.—Fort Worth Mar. 11, 2011, orig. proceeding) (mem. op.) (grandparents who satisfied section 102.004(a)'s requirements for filing original suit "also have the right to intervene in real parties' original, pending suit to terminate . . . parental rights and seek managing conservatorship . . . ."); *cf. In re Union Carbide Corp.*, 273 S.W.3d 152, 155 (Tex. 2008) (per curiam) ("[A] party may intervene if the intervenor could have 'brought the [pending] action, or any part thereof, in his own name.'") (quoting *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990)).

Ad Litem Prater moved to strike the Wilsons' petition to intervene, arguing that (1) the Wilsons alleged standing to "intervene based on substantial contact with the child, and the claim that the biological parents name[d] them as potential adoptive parents," (2) section 102.004(b) states that a court may grant leave to intervene to a person with substantial past contact with the child, but the "Texas Family Code makes no mention of a claim that if the biological parents name [the

21

Wilsons] as potential adoptive parents this would be a reason to allow standing to intervene;" (3) the Wilsons failed to request leave to intervene; and (4) the Wilsons do not have substantial contact with A.T. The Wilsons responded to Ad Litem Prater's motion to strike, contending, among other things, that they had standing to intervene because they had substantial past contact with A.T. and had been named by both biological parents as managing conservators of the child.

At the hearing on intervention, the Wilsons attempted to establish that they had been named specifically as managing conservators in Mother's and Father's affidavits of relinquishment. The Wilsons argued that the affidavits are "very relevant" because they named the Wilsons as "joint managing conservators as well as the sole managing conservator." The trial court declined to consider the affidavits; sustained the Department's relevancy objection regarding the affidavits; and stated: "It's not relevant. . . . It may be in another proceeding, but [not] on the standing issue." Despite the Wilsons' attempt at the hearing to (1) argue that they have standing to intervene in the case because they had been named managing conservators in the parents' affidavits of relinquishment; and (2) present evidence of the parents' affidavits naming them managing conservators, the trial court declined to consider the Wilsons' argument.

It was error for the trial court not to consider whether the Wilsons have standing to intervene under section 102.003(a)(10) when standing to intervene under that section was raised by the Wilsons' pleadings and the Wilsons' arguments at the hearing on intervention. Because the trial court erred in declining to consider whether the Wilsons have standing to intervene under section 102.003(a)(10), we conclude that the trial court erred by striking the Wilsons' petition to intervene without considering whether the Wilsons have standing to intervene under section 102.003(a)(10). We therefore sustain the Wilsons' first

22

issue in that regard.[7]

CONCLUSION

Having concluded that the trial court properly struck the Wilsons' petition to intervene for lack of standing under section 102.004(b) but erred in failing to consider whether the Wilsons had standing to intervene under section 102.003(a)(10), we reverse the trial court's judgment with respect to the appointment of the Department of Family and Protective Services as sole managing conservator and remand this cause for further proceedings consistent with this opinion.   We affirm the trial court's judgment with respect to establishment of paternity and termination of parental rights.[8]


/s/    William J. Boyce
        Justice


Panel consists of Justices Boyce, Busby, and Wise.

---

[7] In light of our disposition of the first issue, we need not address the Wilsons' alternative argument in issue one that there was evidence before the court contradicting Ad Litem Prater's contention that she did not receive the Wilsons' petition to intervene.  We also need not address the Wilsons' third issue.  With respect to the Wilsons' second issue, we conclude that they have no basis to challenge on appeal the sufficiency of the evidence supporting the termination of Father's parental rights; Father has not appealed from the trial court's judgment terminating his rights, and the Wilsons filed pleadings in the trial court seeking termination of Father's parental rights.

[8] Father has not appealed the establishment of paternity.  Mother and Father have not appealed the termination of their parental rights.