**Opinion issued March 3, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00929-CV

_____

## IN RE DEBRA SHIFFLET AND GEORGE SHIFFLET, Relators

_____

## Original Proceeding on Petition for Writ of Mandamus

_____

## OPINION

This original mandamus proceeding arises from an underlying motion to modify a suit affecting the parent-child relationship ("SAPCR") filed by the real party in interest, Dawn Renee Cantrell ("Dawn").[1]  Dawn had previously obtained a temporary order in June 2014 enjoining possession or access by the father, and

---

[1]    The underlying case is *In the Interest of B.R.M. and T.S.M., Children*, Cause No. 2004-37975, in the 310th District Court of Harris County, Texas, the Honorable Lisa Millard presiding, who is named as the respondent.

then filed a motion to modify the SAPCR as to her children, B.R.M. and T.S.M. The relators, Debra and George Shifflet (collectively, the "Shifflets"), the paternal step-grandfather of the children in question and his wife, filed a petition in intervention in the modification action. After a non-evidentiary hearing on standing, the trial court granted Dawn's motion to dismiss the intervention for lack of standing.

In this petition for a writ of mandamus, the Shifflets seek to vacate the trial court's October 22, 2014 order granting Dawn's motion to dismiss their intervention for lack of standing. We conditionally grant the petition.

## BACKGROUND

The underlying case is a modification of the SAPCR involving two teenage children, a 16 year-old girl, B.R.M., and a 13 year-old boy, T.S.M. The parents, Dawn and the father, Willie E. Moore ("Willie"), were divorced in 2004 and agreed by order to modify the parent-child relationship on December 29, 2009 ("2009 Order"). In the 2009 Order, the parents were named joint managing conservators and Willie was granted the exclusive right to establish the primary residence of the children. The 2009 Order contained a single provision relating to the Shifflets, Willie's step-father and his current wife, providing them reasonable phone access to the children, including without limitation phone access three

2

evenings a week, and allowing this provision to be enforced by either parent or by the Shifflets, singularly and together, in their own name.

On May 1, 2014, Willie filed a petition for a writ of habeas corpus with respect to the children alleging that Dawn had illegally kept their children from him. On June 2, 2014, the trial court signed an order requiring Dawn to be at the courthouse on June 10, 2014, with the children.

On June 9, 2014, Dawn filed an answer to the habeas petition asserting, among other things, that she "has been in possession of the children to protect their safety," because Willie had been convicted of domestic violence and he had "relinquished control of [B.R.M.] for more than six months prior to the filing of the Writ of Habeas Corpus." In her affidavit attached to her habeas answer, she also alleged her possession of T.S.M. since March of 2014.

On June 10, 2014, Willie and his counsel failed to appear at the hearing. The Shifflets were not noticed and, consequently, did not appear at this hearing either.

The trial court signed an order on June 18, 2014, denying Willie's habeas petition. In this June 18th Order, the trial court also made factual findings that are relevant to this mandamus petition, including that B.R.M. had been in Dawn's possession for over six months before the filing of the habeas petition, that Willie

3

had not had any possession of B.R.M. since July 2013, and that T.S.M. had been in Dawn's possession since March 2014 and Willie had not had any possession of T.S.M. since March 2014. The trial court also entered Temporary Orders in the same June 18, 2014 order denying Willie's habeas petition (collectively, the "June 18th Temporary Order"). The order appointed Dawn as temporary sole managing conservator and Willie as temporary possessory conservator, but enjoined Willie from having any access or possession of the children until further court order.

Later on the same day, Dawn filed a motion to modify the parent-child relationship seeking to be named the permanent sole managing and possessory conservator over her two children. Dawn's motion also sought temporary restraining orders against Willie and his current wife, Kelly Moore ("Kelly"), to prevent them from accessing or possessing the children. As support, Dawn's motion attached Willie's underlying criminal proceeding papers showing that he had been twice convicted of assaulting Kelly for which he was placed on three years community supervision in May 2012. Dawn also attached photos showing bruises on her children that she claimed were caused by Willie.

On September 21, 2014, the Shifflets filed a Petition in Intervention ("Intervention"), seeking to intervene in Dawn's modification action and to be named sole managing conservators of the grandson, T.S.M. The Shifflets' Intervention claimed standing because they were parties affected by the 2009

4

Order and because they have had actual care, control, and possession of T.S.M. for at least six months. They further contended that Willie had voluntarily relinquished the actual care, control, and possession of T.S.M. for at least six months and that they had had actual care, control, and possession of him for more than that period. In their affidavit in support of their Intervention, the Shifflets stated that T.S.M. had lived with them from May 2004 to August 2008 and again from March 2014 until September 15, 2014, both times with the permission of both parents, and that Dawn had also lived with them from March 2014 until June 5, 2014. The Shifflets' affidavit admitted that they were step-grandparents, but claimed that they needed to be named temporary conservators because of Willie's convictions, because Dawn and her current husband were currently living in a hotel with the two children in living conditions that were "very unpleasant and unsafe," and because neither child was enrolled in school. The Shifflets requested that the Court render a temporary possession order designed to protect the safety and well-being of children because of family violence committed against them and others by Willie.

That same day, on September 21, 2014, the Shifflets also sought a temporary restraining order ("T.R.O.") restraining both Willie and Dawn from disturbing the peace of the children or another party, withdrawing the children from enrollment in the school or day-care facility in which they were enrolled, hiding the children,

making disparaging remarks about the other parties within the hearing of the children, and changing the child's usual place of abode, and requested that both Willie and Dawn be ordered to pay child support while the case was pending. On October 2, 2014, the trial court signed both the T.R.O. and Notice of Hearing for Temporary Orders, setting them for an October 22, 2014 hearing to determine whether the T.R.O. should be made a temporary injunction pending final hearing.

On October 8, 2014, Dawn filed her answer to the Shifflets' petition in intervention, arguing that the Shifflets lacked standing to file the Intervention, under Section 102.004 of the Texas Family Code,[2] because they were not biologically related to their step-grandson, T.S.M. Dawn further argued that the Shifflets did not have actual care, control, or possession of T.S.M. for at least six months ending not more than ninety days before filing their petition in intervention, under Section 102.003(a)(9).[3]

---

[2] Section 102.004 provides, in relevant part, that "*[i]n addition to the general standing to file suit provided by Section 102.003, a grandparent*, or another relative of the child related within the third degree by consanguinity, *may file an original suit requesting managing conservatorship* if there is satisfactory proof to the court" that "the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development" or both parents or the managing conservator or custodian filed the petition or consented to the suit. TEX. FAM. CODE ANN. § 102.004(a) (West Supp. 2014) (emphasis added).

[3] Section 102.003(a)(9) provides, in relevant part, that "[a]n original suit may be filed at any time by: . . . (9) a person, other than a foster parent, who has

On October 16, 2014, Dawn filed her motion to dismiss the Shifflets' petition in intervention for lack of standing because the June 18th Temporary Order was already in place naming Dawn as the sole managing conservator of both children. Dawn argued that the trial court's June 18th Temporary Order had made factual findings that the children had been in Dawn's possession since at least March 2014, negating the Shifflets' standing under Section 102.003(a)(9), as they could not have had "exclusive" possession for the statutorily-required six-month period. Dawn further argued that the Shifflets' affidavit was inadequate as a matter of law because it referred mainly to Willie, who had already been temporarily enjoined from possession by the June 18th Temporary Order, and inaccurately stated that Dawn refused to enroll T.S.M. in school because it was the Shifflets who had wrongfully withheld T.S.M. from Dawn and who had failed to enroll him. Dawn also requested that her motion to dismiss be heard before the T.R.O./temporary orders hearing, and filed a notice of hearing scheduling her motion for the same October 22, 2014 date.

On October 20, 2014, the Shifflets filed an amended petition in intervention seeking sole managing conservatorship of both children, B.R.M. and T.S.M.

---

had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." *Id*. at § 102.003(a)(9).

7

On October 22, 2014, the trial court held a non-evidentiary hearing on standing and heard from both counsel on Dawn's motion to dismiss. Dawn repeated her motion to dismiss arguments and noted that while most of the Shifflets' affidavit discussed Willie, the trial court had already made findings in its June 18th Temporary Order excluding Willie from access and that Dawn had had possession of the children since March of 2014. At Dawn's request, the trial court agreed to take judicial notice of its June 18th Temporary Order. Dawn contended that the June 18th Temporary Order's factual finding that she had actual possession of both of her children since March 2014 made the Shifflets' affidavit "insufficient as a matter of law," under Section 102.003(a)(9), requiring dismissal. Dawn later asserted that the Intervention also should be dismissed because the parental presumption under Chapter 153 of the Family Code should be applied.[4]

The Shifflets countered, during the hearing, that Section 102.003(a)(9) does not require that a person seeking conservatorship of a child under that general standing provision be a blood relative of the child. It requires only possession of the children for a six-month period, which need not be continuous. Their counsel also stated that the Shifflets were present in court and ready to testify regarding

---

[4]     Chapter 153 of the Family Code addresses the merits of "Conservatorship, Possession, and Access" to a child. Section 153.131 provides a rebuttable presumption that a fit parent be appointed managing conservator. *See id*. at § 153.131(b).

their actual care, custody, and control of the children. However, the trial court did not permit them to testify.

The Shifflets also asserted that they had standing, under Section 156.002(a) of the Family Code,[5] especially as to the granddaughter, B.S.M., because the court's 2009 Order Dawn was seeking to modify allowed them phone visitation rights to both grandchildren and their rights were therefore affected by the June 18th Temporary Order. They further contended that, therefore, they had standing under Chapter 153 of the Code to assert rights to conservatorship and possession of both children. In particular, they pointed to Section 153.009, which provides that the trial court may interview a child 12 years of age or older to determine with whom the child wishes to live.[6] The Shifflets requested that the trial court take judicial notice of that 2009 Order. Finally, they argued that the parental presumption did not apply in modification actions, such as this case.

After hearing only the arguments of counsel on standing, and without receiving evidence other than to take judicial notice of the contents of the June 18th Temporary Order, the trial court orally granted Dawn's motion to dismiss the Intervention and signed an order later that day ("October 22nd Order"). Despite

---

[5]    Section 156.002(a) provides, "A party affected by an order may file a suit for modification in the court with continuing, exclusive jurisdiction." *Id.* at § 156.002(a).

[6]    *See id.* at § 153.009(a).

9

the absence of any witness testimony on standing, the October 22nd Order stated that, "[a]fter the hearing of testimony and arguments of counsel, the Court orders that the Intervention filed in this matter is hereby DISMISSED for lack of standing."

Immediately after ruling that the Shifflets did not have standing to intervene, the trial court proceeded to hold a partial *ex parte* evidentiary hearing on Dawn's counsel's separately-filed writ of habeas corpus for children and temporary orders. Dawn testified that, although her children had recently returned to stay with the Shifflets because she and her new husband had been staying in a hotel since June 2014, she had since moved into a new house, but that the Shifflets had refused to turn over possession of her children the previous weekend. The trial court did not hear from any other witnesses and orally granted Dawn's habeas writ.

On November 19, 2014, the Shifflets filed this mandamus petition contending that the trial court's October 22nd Order was an abuse of discretion because: (1) their Intervention affidavit stated unrebutted facts showing their possession of T.S.M. for at least the six-month period before filing the Intervention, which they argued was sufficient to establish standing under Section 102.003(a)(9), and they should have been allowed to testify to rebut Dawn's motion; and (2) they also had standing to file the Intervention because the 2009 Order gave them significant phone access rights to both grandchildren so that they

10

were parties affected by that order, under section 156.002(a). The Shifflets primarily claimed standing under the general standing provision of Section 102.003(a)(9), and alternatively under Section 156.002. The Shifflets further claimed that they lack an adequate remedy by appeal because temporary orders in SAPCRs are not appealable. The Shifflets sought either an order vacating the October 22nd Order dismissing their Intervention as to both children or at least as to T.S.M.

Dawn responded that the Shifflets had failed to show standing to intervene under Section 102.003(a)(9) because the trial court's June 18th Temporary Order already had found that both children were in Dawn's continuous possession after at least March 2014. Dawn further asserted that the Shifflets also lacked standing to intervene, under Section 156.002, because they were not listed as actual parties in the 2009 Order, were not burdened with any duties by that phone access provision, and lacked "sufficient interest" in the children by virtue of that 2009 Order. Finally, Dawn argued that the Shifflets failed to show that they lacked an adequate remedy by appeal because the 2009 Order did not grant them a right as parties, other than to enforce the phone access provision, and thus the October 22nd Order did not deprive them of a substantial right.

## STANDARD OF REVIEW

Mandamus is an extraordinary remedy, available only when the relator can show both that: (1) the trial court clearly abused its discretion; and (2) there is no adequate remedy by way of appeal. *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding) (per curiam). A clear abuse of discretion occurs when a trial court "reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding) (internal quotation marks and citation omitted). A trial court has no discretion in determining what the law is or in applying the law to the particular facts. *Id.* at 840. A clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Id.*

In determining whether an appeal is an adequate remedy, we consider whether the benefits outweigh the detriments of mandamus review. *In re BP Prods. N. Am., Inc.*, 244 S.W.3d 840, 845 (Tex. 2008) (orig. proceeding). A party establishes that no adequate appellate remedy exists by showing it is in real danger of losing its substantial rights. *Canadian Helicopters, Ltd. v. Wittig*, 876 S.W.2d 304, 306 (Tex. 1994) (orig. proceeding).

## STANDING

### A. General Standing Principles

A party may intervene into a lawsuit, subject to being stricken out by the trial court for sufficient cause on motion of a party. TEX. R. CIV. P. 60. A person can intervene if he could have brought the same action on his own. *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990).

"A party seeking conservatorship of a child must have standing to seek such relief." *In re McDaniel*, 408 S.W.3d 389, 396 (Tex. App.—Houston [1st Dist.] 2011) (orig. proceeding) (citations omitted). "Standing . . . is implicit in the concept of subject-matter jurisdiction, and is a threshold issue in a child custody proceeding." *Mauldin v. Clements*, 428 S.W.3d 247, 262 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citations omitted). "Whether a party has standing to pursue a cause of action is a question of law that we review de novo." *Id.* (citation omitted). "In our de novo review of standing, we must take as true all evidence favorable to the challenged party and indulge every reasonable inference and resolve any doubts in the challenged party's favor." *In re McDaniel*, 408 S.W.3d at 397 (citations omitted).

"When standing has been conferred by statute, the statute itself should serve as the proper framework for a standing analysis." *In re K.D.H.*, 426 S.W.3d 879, 883 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citation omitted). "In the

context of a [SAPCR], standing is governed by the Family Code, and [t]he party seeking relief must allege and establish standing within the parameters of the language used in the statute." *In re McDaniel*, 408 S.W.3d at 397 (internal quotation marks and citations omitted). The reviewing court must give effect to the Legislature's intent from the language used in the statute and not look to extraneous matters for an intent the statute does not state. *In re K.D.H.*, 426 S.W.3d at 883. If the meaning of the statutory language is unambiguous, the interpretation supported by the plain meaning must be adopted. *Id*. at 884.

Ordinarily, standing is based on the existence of certain facts. *In re K.D.H.*, 426 S.W.3d at 884 (citation omitted). A court deciding an issue of standing is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Bland Indep. Sch. Dist.* v. *Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000). A challenge to standing cannot be used to require the intervenor to prove his entire case but should be limited to facts that might be characterized as primarily jurisdictional. *See id*. at 554.

**B.      The Shifflets' Standing Under Section 102.003(a)(9) of the Family Code**

The Shifflets' petition in intervention and affidavit alleged the facts to claim general standing under Section 102.003(a)(9) as the primary basis for their request

14

to intervene in the modification action, particularly as to T.S.M..[7] While the Shifflets filed a petition in intervention rather than an original suit under Section 102.003, a person who satisfies the standing requirements to file an original suit may also intervene. *See In re S.B.*, No. 02-11-00081-CV, 2011 WL 856963, at *2-3 (Tex. App.—Fort Worth Mar. 11, 2011, orig. proceeding) (mem. op.) (grandparents who satisfied section 102.004(a)'s requirements for filing original suit also had right to intervene); *cf. In re Union Carbide Corp.*, 273 S.W.3d 152, 155 (Tex. 2008) (per curiam) ("[A] party may intervene if the intervenor could have brought the [pending] action, or any part thereof, in his own name.") (internal quotation marks and citation omitted). Thus, if the Shifflets satisfy the standing requirements to file an original suit, they also satisfy standing to intervene.

"The burden of proof is on the party asserting standing, and the petitioner must show that the facts establishing standing existed at the time the petition was filed in the trial court." *Mauldin*, 428 S.W.3d at 263 (citation omitted). Because

---

[7]    Contrary to Dawn's arguments, the Shifflets did not seek grandparent standing under Section 102.004 or possession or access under Section 153.432(a), the latter of which would bar their standing because they are step-grandparents, not biological or adoptive grandparents. *See In re Derzapf*, 219 S.W.3d 327, 332-33 (Tex. 2007) (orig. proceeding). The Texas Supreme Court stated that, "[r]egardless of whether [Relator] satisfied section 102.003(a)(9)'s general standing requirements for filing a SAPCR— an issue we do not reach—the trial court awarded access based on the standards set forth in section 153.433, the grandparent access statute." *Id.* at 332. Here, the *Derzapf* decision does not apply because the parties did not seek and the trial court did not make a Section 153.433 possession or access determination.

the Shifflets filed their original Intervention on September 21, 2014, their standing to intervene is measured at the time their intervention was filed. "If the petitioner fails to meet this burden, the trial court must dismiss the suit." *In re McDaniel*, 408 S.W.3d at 397 (citations omitted).

Under Section 102.003, the general standing to file suit provision, Section 102.003(a)(9) grants standing to "a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." TEX. FAM. CODE ANN. § 102.003(a)(9) (West Supp. 2014). "An individual filing such a suit and claiming standing under this statute need only file her petition and allege that she is a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." *In re K.D.H.*, 426 S.W.3d at 884 (citing Section 102.003(a)(9) and *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). "In such a case, pleading a proper basis for standing is sufficient to show standing, unless a party challenges standing and submits evidence showing the non-existence of a fact necessary for standing." *Id.* (citing *Miranda*, 133 S.W.3d at 227). "In that event, the petitioner must submit evidence raising a fact issue on the challenged elements to avoid a dismissal for lack of standing." *Id.* (citing *Miranda*, 133 S.W.3d at 227-28). If the facts are

16

disputed, the trial court cannot dismiss for lack of standing. *Miranda*, 133 S.W.3d at 227-28.

"A determination of standing under section 102.003(a)(9) is necessarily fact specific and determined on a case-by-case basis." *In re Fountain*, No. 01-11-00198-CV, 2011 WL 1755550, at \*3 (Tex. App.—Houston [1st Dist.] May 2, 2011, orig. proceeding) (citation omitted). "In computing the time necessary for statutory standing, the court may not require that the time be continuous and uninterrupted but shall consider the child's principal residence during the relevant time preceding the date of commencement of the suit." *Id.* (internal quotation marks omitted) (citing TEX. FAM. CODE ANN. § 102.003(b)). "To the contrary, this Court and others have previously held that [n]othing in section 102.003(a)(9) requires that care, custody, control and possession be *exclusive*." *Id*. at \*4 (internal quotation marks and citations omitted) (emphasis added).

With these principles in mind, we determine whether the trial court abused its discretion when it granted the motion to dismiss, based solely as a matter of law on the pleadings and arguments of counsel, and dismissed the Shifflets' Intervention for lack of standing to intervene in or to file an original suit requesting sole managing conservatorship under Sections 102.003(a)(9) and 156.002(a).

# ANALYSIS

**1. The Trial Court Abused its Discretion by Dismissing the Intervention as a Matter of Law Determining Standing on Pleadings Alone or by Judicial Notice of the June 18th Temporary Order**

The Shifflets' Amended Intervention and affidavit pleaded a proper basis for standing under Section 102.003(a)(9) by alleging that T.S.M. had been living with them from the six-month period from March to September 15, 2014, ending not more than 90 days prior to filing the petition. As noted above, "pleading a proper basis for standing is sufficient to show standing, unless a party challenges standing and submits evidence showing the non-existence of a fact necessary for standing." *In re K.D.H.*, 426 S.W.3d at 884. Therefore, the Shifflets established their standing to intervene under the general standing statute, subject to Dawn's producing controverting evidence showing that they had not had care, custody, and control of the child, T.S.M., during the relevant time period.

To controvert the Shifflets' pleadings, Dawn's counsel requested, during the standing hearing, that the trial court should take judicial notice of its June 18th Temporary Order and the trial court responded affirmatively and granted the request. Dawn contended that the factual findings made in that June 18th Temporary Order, specifically the finding that Dawn had possession of both children since March of 2014, made the Shifflets' affidavit insufficient as a matter of law by rebutting their contention that they had actual possession of at least the

18

grandson, T.S.M., for the requisite six-month period.  The trial court agreed.  We conclude, however, that this was error.

To be the proper subject of judicial notice, an adjudicative fact must be "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  TEX. R. EVID. 201(b); *see also Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012) (citations omitted).  Judicial notice is mandatory if requested by a party and if the court is supplied with the necessary information.  *See* TEX. R. EVID. 201(d); *MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 484 n.7 (Tex. 2010).

However, "[i]t is well recognized that a trial court may take judicial notice of its own records in a cause involving the same subject matter *between the same, or practically the same, parties*."  *Gardner v. Martin*, 162 Tex. 156, 158, 345 S.W.2d 274, 276 (1961) (emphasis added).  "A trial court may take judicial notice of its own records in matters that are generally known, easily proven, and not reasonably disputed."  *In re R.S.D.*, 446 S.W.3d 816, 820 n.4 (Tex. App.—San Antonio 2014, no pet.) (internal quotation marks and citation omitted).  "Therefore, a court may take judicial notice that a pleading has been filed in the case, that it has signed an order, or of the law of another jurisdiction," but "[a] court may not take judicial notice of the *truth* of allegations in its records."  *Id.* (emphasis in original)

(citation omitted); *see also Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (noting that "the trial court may not take judicial notice of the *truth* of factual statements and allegations contained in the pleadings, affidavits, or other documents in the file.") (emphasis in original) (citations omitted).

Here, as noted above, Dawn had submitted an answer and affidavit controverting Willie's habeas corpus petition and, consequently, the Shifflets were neither parties to, nor present at, the June 10, 2014 habeas hearing. Thus, the trial court abused its discretion because its June 18th Temporary Order was not the proper subject of judicial notice for the October 22, 2014 non-evidentiary hearing on standing since the Shifflets were not the same parties at the prior hearing. *See Gardner*, 162 Tex. at 158.

Furthermore, to the extent that the trial court granted Dawn's judicial notice request, under Rule 201(d), of the truth of the adjudicative factual findings in its June 18th Temporary Order, that was also an abuse of discretion. Such factual findings regarding Dawn's possession of her children were neither "(1) generally known within the territorial jurisdiction of the trial court [n]or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." TEX. R. EVID. 201(b). "When evidence is the subject of improper judicial notice, it amounts to no evidence." *Guyton*, 332 S.W.3d at

20

693 (citing *Augillard v. Madura*, 257 S.W.3d 494, 503 n.14 (Tex. App.—Austin 2008, no pet.) (finding evidence legally insufficient to support judgment where trial court took judicial notice of testimony from a hearing held thirteen months earlier in the same case, but the evidence was not offered in the second hearing)). Therefore, if the trial court took judicial notice of the truth of the June 18th Temporary Order's findings on Dawn's possession of her children and used it as evidence to dismiss the Shifflets' Intervention and affidavit for lack of standing as a matter of law, that was an abuse of discretion. *See id.*

Moreover, as noted above, "[n]othing in section 102.003(a)(9) requires that care, custody, control and possession be *exclusive.*" *In re Fountain*, 2011 WL 1755550, at *4 (internal quotation marks and citations omitted) (emphasis added). Thus, to the extent that the trial court found the Shifflets' affidavit insufficient as a matter of law because it stated that Dawn was also living with them from March to June 5, 2014, with T.S.M., that was an abuse of discretion since Section 102.003(a)(9) does not require exclusive care, custody, control and possession.

We conclude that Dawn has not shown that the Shifflets lacked standing to intervene under section 102.003(a)(9) of the Family Code, and that the trial court abused its discretion in granting her motion to dismiss.

## 2.  Chapters 156 and 153 of the Family Code and Implied Application of the Parental Presumption

Dawn also argued that the Shifflets lacked standing to intervene under Chapters 153 and 156 of the Family Code because they were not parties to the 2009 Order and did not have a sufficient interest in the children to proceed under those provisions.  In addition, Dawn also argued during the hearing that the parental presumption, under Section 153.131, should apply to override the Shifflets' interests as grandparents.  The Shifflets countered that they do have standing under these provisions because the 2009 Order granted them "important rights relative to the children," as to both T.S.M. and B.R.M., and allowed them to enforce the 2009 Order in their own name, which effectively granted them the status of parties.  They also argued that the parental presumption does not apply in a modification action.

Both parties agree that Section 156.002(a) confers standing if the persons relying on the section that show that they were parties affected by the order a party is seeking to clarify or modify.  *See* TEX. FAM. CODE ANN. § 156.002(a); *see also In re S.A.M.*, 321 S.W.3d 785, 790 (Tex. App.—Houston [14th Dist.] 2010, no pet.).  Both also agree that *In re S.A.M.*, issued by our sister court, the Fourteenth Court of Appeals, is the controlling authority on point.

In *In re S.A.M.*, the mother of the children died and the Texas Department of Family and Protective Services filed a SAPCR. *Id.* at 787. A non-relative, Susan Doyle, was granted leave to intervene because of her substantial past contact with the children. *Id.* Subsequently, an agreed final order was signed by the trial court. *Id.* Although Doyle was not named a conservator, she was granted daily telephone access with the children. *Id.* A year and half later, Doyle filed a modification suit seeking to remove the children's uncle as the sole managing conservator of the children and to appoint her in his place. *Id.* The uncle argued that Doyle lacked standing to intervene under section 156.002 and the trial court agreed. *Id.* at 788. The appellate court reversed.

The court of appeals held that in order to have standing under section 156.002(a), Doyle must (1) be a party to the order as to which modification was sought and (2) have a "sufficient interest" in a child who was the subject of the order such that the order affected her. *See id.* at 789-90; *see also Pratt v. Tex. Dep't of Human Resources*, 614 S.W.2d 490, 495 (Tex. Civ. App.—Amarillo 1981, writ ref'd n.r.e.). Because Doyle had intervened in the original proceeding, made appearances at hearings, was named a party to the 2006 order, and signed the 2006 order as a party, the appellate court found that she was a party pursuant to section 156.002(a). *In re S.A.M.*, 321 S.W.3d at 790. The court rejected the argument that Doyle could not be affected by the 2006 order because she did not

receive any conservatorship rights under it.  *In re S.A.M.*, 321 S.W.3d at 791. Because Doyle's telephone access was "important to the children's well-being," she was found to have "sufficient interests" in the children to maintain standing. *Id*. at 792.

Here, the 2009 Order was likewise an agreed order.  The Shifflets' son Willie was named managing conservator with the right to designate the primary residence of the children, and Dawn was named joint managing conservator.  The Shifflets were given rights to telephone visitation with the children at least three days a week and were expressly permitted to enforce the order in their own name, either singularly or together.  By granting the T.R.O., which the trial court signed on October 2, 2014, the Shifflets were allowed to seek to enforce the 2009 Order because the T.R.O. enjoined all parties from, among other things, changing both childrens' usual place of residence pending the final hearing.

The record of the case shows that Willie was prohibited from seeing the children due to his domestic violence convictions.  The Shifflets effectively seek by their petition for intervention in this modification suit to step into his shoes. The record also shows both parents agreed for extended periods of time that the children should live with the Shifflets, and they did so.  It also shows that Dawn herself lived with the Shifflets for a period of time shortly before the filing of this suit.  Under these circumstances, we conclude that the Shifflets have shown that

they have substantial rights to the children that are affected by this suit and that their access to the children was important to the children's well-being. We therefore hold that they have a sufficient interest in both of the children to have standing to intervene in this suit by Dawn to modify the 2009 Order, under Section 156.002(a), and to be named sole managing conservator of the children.

In addition, we hold that Dawn's argument that the Chapter 153 parental presumption applies to this suit is without merit. The Texas Supreme Court has "concluded that Chapter 153's parental presumption does not apply in a Chapter 156 modification proceeding." *Mauldin*, 428 S.W.3d at 267 (citing *In re V.L.K.*, 24 S.W.3d 338, 344 (Tex. 2000)). Thus, to the extent the trial court impliedly found that the parental presumption applied here to dismiss the Shifflets' Intervention as a matter of law, this was an error of law and, therefore, an abuse of discretion.

Accordingly, we conclude that the trial court abused its discretion by dismissing the Shifflets' Intervention under Chapters 156 and 153 of the Family Code.

Moreover, to the extent the trial court dismissed this suit as a matter of law under section 102.004 without any controverting evidence from Dawn on the Shifflets' standing to pursue their claims, it likewise abused its discretion. *See Miranda*, 133 S.W.3d at 227; *In re K.D.H.*, 426 S.W.3d at 884. Furthermore, to

the extent that the trial court took judicial notice of the truth of the June 18, 2014 Temporary Order's factual findings as evidence to controvert the Shifflets' affidavit, that was an abuse of discretion as this *ex parte* order was not evidence. *See Guyton*, 332 S.W.3d at 693.

## 3. No Adequate Remedy by Appeal Exists for the Shifflets

This Court has noted that "[b]ecause temporary orders are not appealable, mandamus is an appropriate remedy when a trial court abuses its discretion in issuing temporary orders in a [SAPCR]." *In re McDaniel*, 408 S.W.3d at 396 (citing *In re Derzapf*, 219 S.W.3d at 335). "Similarly, an order denying a motion to dismiss for lack of standing in a [SAPCR] is not appealable, and mandamus relief is an appropriate remedy." *Id.* (citation omitted). Because the trial court erroneously dismissed the Shifflets' intervention, they are in real danger of losing substantial rights, as they cannot participate as parties to the modification action. *See Wittig*, 876 S.W.2d at 306. Thus, the Shifflets lack an adequate remedy by appeal.

## CONCLUSION

We conditionally grant the mandamus petition and direct the trial court to vacate its October 22, 2014 order granting Dawn's motion to dismiss. We remand the case to the trial court for further proceedings consistent with this opinion. We are confident that the trial court will promptly comply, and our writ will issue only if it does not comply within 30 days of the date of this opinion.


Laura Carter Higley
Justice


Panel consists of Justices Keyes, Higley, and Brown.

27