# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-21-00145-CV

---

### In re Angie Ramirez

---

### ORIGINAL PROCEEDING FROM LLANO COUNTY

---

### M E M O R A N D U M   O P I N I O N

Relator Angie Ramirez ("Grandmother") has filed a petition for writ of mandamus seeking relief from the trial court's February 26, 2021 order, which denied her petition to intervene in a suit affecting the parent-child relationship ("SAPCR") based on the trial court's conclusion that she lacked standing.[1]  We will conditionally grant mandamus relief.

### BACKGROUND

Real party in interest K.S. ("Mother") has three children.[2]  She shared custody of her oldest daughter ("Child") with real party in interest J.R. ("Father") pursuant to an informal arrangement.[3]  From approximately January 2019 to February 2020, Father lived with

---

[1] The trial court stylized its order as "Order Denying De Novo Request," but its effect was to conclude that Grandmother did not have standing to intervene.

[2] We use pseudonyms and initials because this original proceeding arises out of a case in which the termination of parental rights was at issue.  *See* Tex. R. App. P. 9.8(b).

[3] The younger two children are the children of Mother and her current partner.

Grandmother (his mother), and therefore Child would stay at Grandmother's home when she was with Father.

On February 27, 2020, the Texas Department of Family and Protective Services filed an original SAPCR seeking temporary managing conservatorship of all three children and termination of parental rights when Mother tested positive for drugs after the birth of her third child. The trial court ordered an emergency removal, and Child and the younger two children were placed with Grandmother on the same day.[4]

On August 12, 2020, the trial court subsequently ordered the children to be removed from Grandmother after accusations of physical abuse and negligence of one of the two younger children while in Grandmother's care. The Department removed all three children as of August 15, 2020 and placed them with other family members.

Less than ninety days later, on November 10, 2020, Grandmother filed her petition to intervene in the underlying SAPCR, seeking to terminate the parents' rights and be appointed the managing conservator of Child. Grandmother asserted she has standing to intervene under Texas Family Code Section 102.003(a)(9), which grants standing to a nonparent (other than a foster parent) who has exercised "actual care, control, and possession of the child" for a six-month period ending within 90 days of filing their petition.[5] Mother objected, contending that Grandmother had not exercised "actual care, control, and possession" for the required six months.

---

[4] Father was incarcerated on unrelated criminal charges in and around the time of the children's placement with Grandmother.

[5] Grandmother also asserted standing to request termination and adoption under Section 102.005(3). *See* Tex. Fam. Code § 102.005(3) (providing standing for adults "who has had actual possession and control of the child for not less than two months during the three-month period preceding the filing of the petition"). The trial court rejected this ground, and Grandmother has not challenged that ruling.

An associate judge denied the petition to intervene, and thereafter Grandmother sought a de novo hearing on her standing to intervene before the trial court.

The de novo hearing was held on February 25, 2021. At the hearing, the trial court stated that the placement of the children with Grandmother from February 27 to August 15, 2020, totaled only five-and-a-half months and was therefore two weeks short of the six-month requirement under Section 102.003(a)(9). The trial court limited testimony at the hearing to the two to three weeks immediately preceding February 27, 2020, stating that was "really the only timeframe that I'm going to be concerned with" for purposes of the standing analysis.

Grandmother presented several witnesses who testified that she was primarily responsible for caring for Child between February 12 and 27, 2020, including waking, feeding, and bathing Child, comforting her at night, and making medical decisions. Father testified that he also lived with Grandmother during this time, and that, although he made some decisions on what Child did every day, Grandmother was in control of Child. There was some conflicting testimony on the specific amount of time Child may have spent with Mother during this specific time, but the testimony generally supported that Child lived with Grandmother and Father for most of those two weeks. Grandmother also testified that Father and Child had lived with her for months prior to the narrow period covered at the hearing.

After hearing only Grandmother's witnesses, the trial court stopped the other parties from calling additional witnesses and concluded that Grandmother had failed to meet her burden. The trial court explained that "having involvement with the child does not convey standing," that neither Father nor Mother had abdicated their parental duties, and that Father had resided in the same home as Grandmother and Child. When Grandmother argued that the trial court's ruling was inconsistent with *In re H.S.*, 550 S.W.3d 151 (Tex. 2018), the court reiterated

3

that Grandmother had failed to satisfy her standing burden. The trial court signed an order on February 26, 2021, determining that Grandmother did not have standing to intervene. Grandmother then filed this petition for mandamus relief.

### STANDARD OF REVIEW AND STANDING FRAMEWORK

We may issue a writ of mandamus to correct a trial court's clear abuse of discretion when no adequate remedy by appeal exists. *In re Rogers*, 370 S.W.3d 443, 445 (Tex. App.—Austin 2012, orig. proceeding). If the trial court erroneously denied Grandmother's petition to intervene, Grandmother will be prevented from participating in the underlying action, leaving her without an adequate remedy on appeal. *See In re Shifflet*, 462 S.W.3d 528, 542 (Tex. App.—Houston [1st Dist.] 2015, orig. proceeding) ("Because the trial court erroneously dismissed the Shifflets' intervention, they are in real danger of losing substantial rights, as they cannot participate as parties to the modification action."); *In re S.B.*, No. 02-11-00081-CV, 2011 WL 856963, at *3 (Tex. App.—Fort Worth Mar. 11, 2011, orig. proceeding) (concluding prospective adoptive parents have no adequate remedy on appeal after trial court struck their petition in intervention). Therefore, whether Grandmother is entitled to mandamus relief turns on whether the trial court abused its discretion by refusing to allow her to intervene.

A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it fails to correctly analyze or apply the law. *In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding). In determining whether the trial court abused its discretion with respect to its resolution of factual issues, we may not substitute our judgment for that of the trial court and may not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (orig. proceeding). Thus, we cannot set aside the trial

court's finding unless it is clear from the record that the court could have reached only one decision. *In re Nitla S.A. de C.V*., 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding).

On the other hand, our review of the trial court's legal determinations is much less deferential. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). A trial court has no discretion in determining what the law is or in applying the law to the particular facts. *See In re Department of Fam. & Protective Servs*., 273 S.W.3d 637, 643 (Tex. 2009) (orig. proceeding). A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Walker*, 827 S.W.2d at 840.

A party seeking conservatorship must have standing to seek such relief. *In re Tinker*, 549 S.W.3d 747, 750 (Tex. App.—Waco 2017, orig. proceeding [mand. denied]). Standing implicates a court's subject-matter jurisdiction and therefore is a question of law we ordinarily review de novo. *In re H.S*., 550 S.W.3d at 155. The Texas Family Code governs standing in SAPCRs, and therefore the party seeking relief must establish standing consistent with statutory requirements. *In re S.M.D*., 329 S.W.3d 8, 12 (Tex. App.—San Antonio 2010, pet. dism'd). Standing is a threshold determination of whether a party "has a sufficient 'justiciable interest' in the suit's outcome to be entitled to a judicial determination." *In re H.S*., 550 S.W.3d at 155. The merits of Grandmother's claim are not before this Court. *See id*. Our analysis is accordingly limited only to whether she has standing to intervene in the SAPCR as a nonparent.

"The Family Code recognizes that a narrow class of nonparents, who have served in a parent-like role to a child over an extended period of time, may come to court and seek to preserve that relationship, over a parent's objections." *Id*. at 163. Under Section 102.003(a)(9), a nonparent other than a foster parent has standing if they "had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing

5

of the petition." Tex. Fam. Code § 102.003(a)(9). "The court may not require" that the six-month period be "continuous and uninterrupted." *Id*. § 102.003(b). Rather, the trial court "shall consider the child's principal residence during the relevant time preceding the date of commencement of the suit." *Id*. Importantly, the "actual care, control, and possession" requirement does not turn on whether the nonparent has "ultimate legal authority" over the child. *In re H.S.*, 550 S.W.3d at 160. Rather, a nonparent has "actual care, control, and possession of the child" under Section 102.003(a)(9) if the nonparent served in a parent-like role by "(1) sharing a principal residence with the child, (2) providing for the child's daily physical and psychological needs, and (3) exercising guidance, governance, and direction similar to that typically exercised on a day-to-day basis by parents with their children." *Id.*; *see also In re H.S.*, 550 S.W.3d at 159 (""[T]he statute by its plain terms focuses on the nonparent's role in the child's life."); *Jasek v. Texas Dep't of Fam. & Protective Servs.*, 348 S.W.3d 523, 534 (Tex. App.—Austin 2011, orig. proceeding) (describing "common threads" in cases where court found actual care, control, and possession by nonparent). A determination of standing under Section 102.003(a)(9) is accordingly fact specific and determined on a case-by-case basis. *In re Shifflet*, 462 S.W.3d at 538.

## DISCUSSION

With the relevant statutory framework in mind, we now turn to the issue at hand. Grandmother asserts that the trial court abused its discretion by applying the wrong legal standard when it concluded that she lacks standing to intervene on grounds that the parents had not abdicated their parental duties and that Father had been residing in the same home as Grandmother and Child. We agree.

The trial court initially stated on the record at the hearing that Grandmother failed to satisfy her burden to establish standing because neither parent had abdicated their parental

duties.  Insofar as the trial court reached its conclusion on that basis, such a ruling is contrary to the standard set forth in *In re H.S.*, in which the Texas Supreme Court explained that a parent does not need to "wholly cease exercising his or her own parental rights and responsibilities in order for a nonparent to exercise those same kinds of responsibilities and obtain standing under section 102.003(a)(9)."  550 S.W.3d at 159.  An abdication requirement, the Supreme Court held, "would effectively add an exclusivity requirement that is not reflected in the statute's plain language."  *Id.* at 158.  Instead, the correct analysis considers whether Grandmother "served in a parent-like role" to Child for the relevant time period, which is shown in part by evidence that the "nonparent consistently makes the kinds of day-to-day decisions associated with raising a child."  *Id.* at 163; *see also Jasek*, 348 S.W.3d at 537 (considering whether nonparent has "actual power or authority to guide or manage" child "without regard to whether they had the legal or constructive power or authority").

Nor does the fact that Father lived in the same home with Grandmother and Child necessarily bar standing.  The standing analysis under Section 103.009(a)(9) does not require "the nonparent's care and control of the child to be exclusive."  *In re H.S.*, 550 S.W.3d at 158.  The focus of the standing analysis is on the "nonparent's role in the child's life."  *Id.* at 159.  Even if Father was also providing some level of care and control of Child in the same home, Grandmother may still satisfy the standing requirements if the record demonstrates that she took "daily responsibility for ensuring that a child is fed, clothed, and emotionally nurtured."  *See id.* at 158. The trial court therefore abused its discretion insofar as it failed to apply the correct standard in analyzing whether Grandmother had standing to intervene.  *See In re Department of Fam. & Protective Servs.*, 273 S.W.3d at 642 ("A trial court has no discretion in determining what the law is or properly applying the law.").

In her response to Grandmother's petition for mandamus relief, Mother argues that *In re H.S.* is factually distinguishable. However, the trial court's error arises not from any comparison between the facts of the present dispute and those of *In re H.S.*, but in its apparent application of a legal standard expressly rejected by the Texas Supreme Court. *See In re H.S.*, 550 S.W.3d at 159 (rejecting previous approach applied by some trial courts that would require parents to have abdicated their parental duties). Moreover, the nonparent-standing analysis is fact specific and determined on a case-by-case basis. *See In re Shifflet*, 462 S.W.3d at 538. There is no requirement that the nonparent must be factually similar to the grandparents in *In re H.S* so long as the nonparent meets the standard articulated in that decision.[6]

On this record, however, we are unable to consider whether Grandmother met the statutory standard because the trial court limited the evidence it would hear to the two (or three) weeks immediately preceding February 27, 2020, despite the statute's express directive that "[i]n computing the time necessary for standing under Subsections (a)(9), . . . the court may not require that the time be continuous and uninterrupted." Tex. Fam. Code § 102.003(b); *see also In re M.B.*, No. 05-19-00971-CV, 2019 WL 4509224, at *3 (Tex. App.—Dallas Sept. 19, 2019, orig. proceeding) (mem. op.) (holding that foster parents met twelve-month requirement under Section 102.003(a)(12) even though their possession was interrupted by five-month period where child lived with her mother). In addition to its limitations on the timeframe for which it would hear evidence, the trial court prevented Mother and other parties from presenting evidence at the de

---

[6] Mother also contends that Grandmother does not have standing because the children were removed by the Department due to allegations of physical abuse of one of the other children while in Grandmother's care. Although such accusations "may prove to be relevant to the district court's ultimate decision on the merits," those accusations are not relevant to the narrow question before us here: whether Grandmother has "standing to bring [her] petition in the first place." *Jasek*, 348 S.W.3d at 537–38.

novo hearing that might controvert the testimony provided in support of Grandmother's standing claim. Thus, we lack a fully developed factual record from which we could evaluate whether Grandmother established her right to intervene.

## CONCLUSION

We conclude that the trial court abused its discretion by basing its denial of Grandmother's petition to intervene on an incorrect legal standard. We therefore conditionally grant the writ of mandamus, lift the temporary stay of the trial-level proceedings, and order the trial court to vacate its order finding that Grandmother lacked standing to intervene. Because the record is incomplete and thus the merits of Grandmother's petition to intervene cannot be accurately determined, we direct the trial court to consider any further evidence relevant and necessary to determine the merits of Grandmother's intervention under the appropriate standard. The writ will issue only if the trial court does not comply with this opinion.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Triana, and Kelly

Filed: May 19, 2021