In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00010-CV
_____

IN THE INTEREST OF N.P.H.

On Appeal from the County Court at Law No. 3
Montgomery County, Texas
Trial Cause No. 13-12-12860 CV

## MEMORANDUM OPINION

"Nancy's"[1] maternal grandparents, "Alice" and "David Frost," appeal from a judgment in a suit affecting the parent-child relationship (SAPCR), which resolved their claims seeking court-ordered rights to their grandchild, Nancy. "Mary," Nancy's mother, initiated the SAPCR by filing it against "Curtis,"

---

[1] To protect the identity of Nancy, a minor, we refer to Nancy, her mother, her father, her maternal grandmother, her maternal grandfather, and her step-father by using pseudonyms. *See* Tex. Fam. Code Ann. § 109.002(d) (West 2014); Tex. R. App. P. 9.8.

1

Nancy's father.[2] At the conclusion of the bench trial conducted on the issues in the SAPCR, the trial court denied the claims made by the Frosts. In four issues, the Frosts complain:

1. The trial court's findings in support of its conclusion naming Mary as Nancy's managing conservator are against the great weight and preponderance of the evidence.

2. The trial court abused its discretion by failing to consider appointing the Frosts as Nancy's managing or possessory conservators and by refusing their request to be awarded court-ordered rights that would require Mary to allow the Frosts to have access to Nancy.

3. The trial court abused its discretion by refusing to allow Alice to express her lay opinion that Nancy would be harmed were the Frosts not to have a court-ordered right allowing them possession or access to Nancy.

4. The trial court abused its discretion by denying the Frosts' motion to disqualify Mary's attorney based on the attorney's previous representation of David Frost in a collections suit and based on David's discussion with the

---

[2] Curtis and Mary were never married. Curtis did not perfect an appeal from the trial court's order, which named him as Nancy's possessory conservator. Curtis also did not file a brief in the appeal.

attorney, before the attorney was hired to represent Mary, of the Frosts desire to have a role in Nancy's life.

Because the trial court did not abuse its discretion with respect to the challenged rulings, we affirm the trial court's judgment.

## Background

In February 2011, Mary filed her original SAPCR against Curtis seeking to recover child support. In her SAPCR, Mary requested that she and Curtis be named as Nancy's joint managing conservators. In his answer, and without alleging any specific facts, Curtis alleged that Mary's boyfriend, Jim,[3] had behaved abusively towards Nancy. Curtis asked that the trial court appoint him to be Nancy's sole managing conservator. Subsequently, Mary amended her petition, and requested that the court appoint her to be Nancy's sole managing conservator.

In 2014, approximately four weeks before the trial, the Frosts filed a petition in intervention in the SAPCR. In their intervention, the Frosts asked the trial court to appoint them to be Nancy's joint managing conservators, alleging that one of

---

[3] While this suit was pending, Jim and Mary had a daughter together and they married. Jim and Mary's daughter was not the subject of the SAPCR proceeding that is the subject of this appeal.

Nancy's parents had subjected Nancy to abuse or neglect.[4] The Frosts also alleged that if the court were to name either Mary or Curtis as Nancy's managing conservator, or were the court to name them as Nancy's joint managing conservators, Nancy's "physical health or emotional development" would be significantly impaired.

After the Frosts filed their intervention, Mary filed a motion that asked the court to strike the intervention from the suit. In her motion to strike, Mary asserted that the Frosts' intervention was untimely and that the Frosts did not have standing to intervene.

Five days before the trial commenced, David filed a motion to disqualify Jon Fultz, Mary's attorney, from representing Mary in the trial. In his motion, David alleged that Fultz had previously represented him in a collections matter, that he introduced Mary to Fultz when Mary was seeking an attorney to file a SAPCR, and that before Fultz met with Mary, Fultz met with him and in that meeting he disclosed information that the Frosts contend in their appeal was both confidential and relevant to Mary's SAPCR.

On the morning the trial was scheduled to begin, the trial court heard David's motion to disqualify Fultz and Mary's motion to strike the Frosts'

---

[4] The allegations in the Frosts' intervention fail to specify which parent the Frosts were claiming had neglected or abused Nancy.

intervention. After hearing evidence and argument, the trial court denied both motions.[5]

All of the issues in the case were tried to the court in a non-jury proceeding. At the conclusion of the trial, the trial court named Mary as Nancy's sole managing conservator, named Curtis as Nancy's possessory conservator, and denied all of the Frosts' claims. Several weeks after the trial, the trial court issued findings of fact and conclusions of law in support of its rulings. With respect to the Frosts' appeal, the significant findings and conclusions state:

- It is in Nancy's best interest to appoint Mary as Nancy's sole managing conservator and to appoint Curtis as Nancy's possessory conservator.

---

[5] Although Mary has not filed a cross-issue complaining of the trial court's ruling on the issue of standing, the record supports the trial court's denial of Mary's motion to strike the Frosts' intervention. The information before the trial court reflects that the Frosts are Nancy's maternal grandparents. With respect to the court's ruling that allowed the Frosts to intervene, Texas law allows grandparents the right to intervene in a SAPCR when the original party filing the SAPCR was authorized by statute to initiate the SAPCR, and when one of the matters that is to be addressed in the SAPCR involves genuine issues of fact regarding whether the court should appoint one or both parents as their child's managing conservator. *See* Tex. Fam. Code Ann. § 102.004(b) (West 2014). Here, the Frosts claimed that Mary had abused or neglected Nancy. Additionally, section 153.433 of the Texas Family Code generally allows biological grandparents, on a proper showing, standing to request court-ordered rights of access or possession to their grandchild. *See* Tex. Fam. Code Ann. § 153.433 (West 2014); *see also Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227-28 (Tex. 2004); *In re Shifflet*, 462 S.W.3d 528, 538 (Tex. App.—Houston [1st Dist.] 2015, orig. proceeding).

- No significant impairment in Nancy's physical health or her emotional well-being will result from appointing Mary as Nancy's sole managing conservator.

- The parental presumption favoring the appointment of Nancy's parents as Nancy's conservators was not rebutted by the evidence from the trial.

- The Frosts failed to establish that they were entitled to a court-ordered right of possession or access to Nancy under section 153.433 of the Texas Family Code, a provision allowing grandparents to be awarded court-ordered rights.

- Nancy's history with the Frosts showed that the Frosts, historically, have had substantial contact with Nancy.

### Standards of Review Regarding Conservatorship, Access, and Admission of Evidence

In issue one, the Frosts complain about the trial court's refusal to appoint them as Nancy's managing conservators. *See* Tex. Fam. Code Ann. § 153.131 (West 2014) (requiring that the trial court appoint a child's parent or parents as the child's managing conservator "unless the court finds that appointment of the parent or parents would not be in the best interest of the child"). Under section 153.131 of the Family Code, a parent benefits from a rebuttable presumption that a decision to appoint the child's parents as the child's conservators will serve the child's best

6

interests. *Id.* Consequently, the Frosts bore the burden to overcome the presumption favoring Mary's appointment as one of Nancy's conservators. *See id.*

An abuse-of-discretion standard applies to an appeal challenging a trial court's decision about who should be appointed as a child's managing conservator. *See In re J.A.J.,* 243 S.W.3d 611, 616 (Tex. 2007). To reverse the trial court's decision regarding such an appointment, the appellant must demonstrate that the trial court's decision was arbitrary and unreasonable. *See id.*; *see also In re M.H.*, 319 S.W.3d 137, 152 (Tex. App.—Waco 2010, no pet.). When the trial court makes express findings supporting its decision, its express findings are viewed in the light that is most favorable to the judgment. *See City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). In a bench trial, the trial court acts as both the factfinder and as the sole judge of the credibility of witnesses. *Fusselman v. Fusselman*, No. 09-11-00435-CV, 2013 Tex. App. LEXIS 12085, at *3 (Tex. App.—Beaumont Sept. 26, 2013, no pet.). Therefore, in reviewing the Frosts' issues, we are required to credit the evidence favoring Mary's appointment if the trial court could have reasonably done so, and we are required to disregard the evidence that favors the Frosts' claims disputing Mary's appointment if the trial court could have reasonably disregarded that evidence. *See id.* at 819-20. We further note that a preponderance-of-the-evidence standard applies to the Frosts'

argument challenging Mary's appointment as Nancy's sole managing conservator; therefore, in our review, we do not employ the heightened standard of review that applies in a parental-rights termination case. *See In re J.A.J.*, 243 S.W.3d at 616.

In their second issue, the Frosts contend that the trial court refused to consider appointing them as Nancy's managing conservators. The Frosts' argument suggests the trial court failed to follow the law by allowing them to challenge Mary's appointment. *See* Tex. Fam. Code Ann. § 102.004(a)(1) (West 2014) (providing a grandparent with standing on proper proof that the appointment of either the parent or parents as managing conservators "would significantly impair the child's physical health or emotional development"). Whether the Frosts should have been heard on their claim seeking rights of conservatorship presents a question of law that is reviewed under a de novo standard. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

As part of their issue two argument, the Frosts also assert that the trial court abused its discretion by refusing to impose an order that required Mary to let the Frosts have periods of possession to Nancy so they could foster their relationship with her. Clearly, an order requiring Mary to allow the Frosts to visit with Nancy would have restricted Mary's rights, as Nancy's parent, to choose when and under what conditions Nancy would be allowed to see the Frosts. On appeal, a trial

8

court's decision denying a grandparent's claim seeking court-ordered rights of access and possession is reviewed using an abuse-of-discretion standard. *In the Interest of R.K.F.*, No. 09-11-00508-CV, 2012 Tex. App. LEXIS 924, at **12-13 (Tex. App.—Beaumont Feb. 2, 2012, no pet.); *In re J.P.C.*, 261 S.W.3d 334, 336-37 (Tex. App.—Fort Worth 2008, no pet.).

In issue three, the Frosts complain that the trial court erred by excluding the opinion Alice sought to express in the trial that Nancy would be harmed if the court refused to provide her with a court-ordered right of possession to Nancy. On appeal, complaints challenging a trial court's evidentiary rulings are reviewed under an abuse-of-discretion standard. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000) (citing *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)). And, even if the appellant shows the trial court excluded evidence that should have been admitted, the appellant must demonstrate not only error, but that the exclusion of the evidence probably caused the factfinder to reach an improper verdict. *See id*. at 907 (discussing whether the trial court's error in admitting evidence caused the jury to reach an improper verdict); *see also Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 883 (Tex. 2014) (requiring the complaining party to demonstrate in the appeal that the judgment turned on the evidence that was made the subject of the appeal); Tex. R. App. P.

44.1(a)(1) (requiring that a judgment not be reversed unless the error probably caused the trial court to render an improper judgment). In evaluating whether the exclusion of the evidence was harmful, we consider all of the evidence that was admitted during the trial in determining if the exclusion of any evidence caused the factfinder to reach an improper verdict. *Kia*, 432 S.W.3d at 883.

Conservatorship and Access

The various arguments the Frosts raise in issues one and two are considered together, as the Frosts' arguments all relate to the trial court's findings that led the court to make Mary Nancy's managing conservator and to reject the Frosts' claims that Mary would harm Nancy if Mary was named as Nancy's managing conservator.

Generally, absent evidence that the parents of a child are not adequately caring for their child, the Due Process Clause protects the parents' decisions about how to best care for their child from being interfered with by government officials. *See Troxel v. Granville*, 530 U.S. 57, 72 (2000) ("As we have explained, the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made."). Under Texas law, the Frosts' claim that sought to interfere with Mary's decisions relied on the grandparent-access statute, which

is found in section 153.433 of the Family Code. *See* Tex. Fam. Code Ann. § 153.433(2) (West 2014) (allowing a court to interfere with a parent's decision regarding parental matters if the grandparent can prove, by a preponderance of the evidence, that denying the grandparent a right to possession or access to the grandchild would significantly impair the grandchild's physical health or emotional well-being); *In re Derzapf*, 219 S.W.3d 327, 333 (Tex. 2007) (original proceeding). Under the grandparent-access statute, a child's grandparents must demonstrate at trial that their grandchild's health or emotional well-being will be significantly impaired before a court can interfere with the choices the child's parent has made about how the child should be raised. *See id.*

Although the Frosts complain that the trial court did not consider their claims, the trial court denied Mary's motion to strike. The fact the trial court allowed the intervention to go forward is inconsistent with the Frosts' argument that their claims were not considered. Additionally, in its findings, the trial court rejected the Frosts' claims for custodial rights to Nancy, and their claims seeking court-ordered rights of access to her. For example, the trial court found that appointing Mary as Nancy's sole managing conservator would not significantly impair Nancy's physical health or emotional development, that the Frosts had not rebutted the presumption that appointing Nancy's parents as her conservators

11

would best serve Nancy's interests, and that the Frosts failed to establish that they were entitled to possession or access to Nancy under section 153.433 of the Family Code. Further, the record from the trial shows that the Frosts, through their attorney, participated fully in the trial. While the Frosts did not succeed on their claims, the record does not show that the trial court refused to consider them.

Next, we address the Frosts' claim that the court abused its discretion by denying their claims. Although the Frosts complain that they were not appointed as Nancy's conservators, a decision about who a court should name as a child's managing conservator revolves around the court's resolution of who, from among the individuals who are vying for the appointment, would serve the child's best interests. *See* Tex. Fam. Code Ann. § 153.002 (West 2014) (providing that "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child"). By statute, the Legislature has created a parental presumption that favors appointing a child's parents as its conservators. *Id.* § 153.131(b). However, the Legislature has authorized courts to appoint nonparents where the evidence shows that appointing the parents "would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development[.]" *Id.* § 153.131(a).

12

To overcome the statutory presumption favoring Mary's appointment as Nancy's managing conservator, the Frosts were required to "offer evidence of specific actions or omissions of the parent that demonstrate an award of custody to the parent would result in physical or emotional harm to the child." *Lewelling v. Lewelling,* 796 S.W.2d 164, 167 (Tex. 1990). On appeal, the Frosts point to their testimony in the trial about three incidents that they claimed resulted in Nancy suffering bruises. They argue that this evidence was sufficient to meet their burden to show that leaving Nancy in Mary's custody would result in Nancy being harmed. However, two of these alleged incidents occurred in 2012, and the Frosts' evidence that Nancy was bruised in these incidents was supported at trial solely by their own testimony, which Mary disputed. The third incident, which the Frosts contend occurred in 2013, was reported to authorities. The Frosts photographed Nancy's bruises from the third incident, and the photographs depict bruises to Nancy's left thigh and shin. However, other than the Frosts' testimony that they suspected Mary or Jim of having caused the bruises to Nancy, the evidence at trial did not show that the Frosts had personally observed how any of Nancy's bruises occurred.

During trial, the Frosts suggested that the bruises in all three incidents resulted from the manner that Jim and Mary had disciplined Nancy. In her

testimony, Mary suggested the bruises Nancy suffered in 2012 resulted from incidents where Nancy, a toddler, had fallen. With respect to the bruises from the incident in 2013, Mary indicated that those bruises came from a spanking that Jim gave to Nancy after Nancy bit her sister on the finger. In her testimony, Mary did not indicate whether she was present when Nancy was disciplined for biting her sister, but Mary denied that she or Jim had ever spanked Nancy using a spoon or a belt. Given the circumstantial evidence regarding the bruising Nancy suffered in 2013, the trial court could reasonably have decided either that the evidence did not prove that Mary was present in 2013 when Jim spanked Nancy, or that the bruises Nancy suffered in that incident were not either extensive or severe. Additionally, the trial court could have reasonably inferred from the evidence that the Frosts had not shown that Jim had intended to injure Nancy when he spanked her in 2013. Regardless, the trial court could reasonably conclude from the evidence that the Frosts had not carried their burden to prove that Mary inflicted any of the bruises discussed by the witnesses in their testimony during the trial.

The record contains additional evidence from non-family members that supports the trial court's conclusion that Nancy was never abused or neglected by Mary. An investigator with Child Protective Services testified during the trial that she investigated an allegation that arose in 2013 regarding a claim that Nancy had

14

been disciplined too harshly. According to the investigator, she determined, after completing her investigation, that the Frosts' claim that Mary and Jim had administered excessive discipline to Nancy was unfounded.

A Montgomery County Sherriff's detective also testified during the trial. According to the detective, he investigated the Frosts' 2013 complaint that Nancy had been injured while in Jim and Mary's care. The detective explained that his investigation of the matter did not result in any criminal charges because the evidence that he uncovered, which included the photographs that were admitted in the trial, did not show that Nancy's bruises resulted from conduct that had been intended to result in an injury.

Matters that relate to questions of conservatorship, possession, and access to children are to be based primarily on the child's best interests. Tex. Fam. Code Ann. § 153.002; *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). Resolving such matters is generally "intensely fact driven," so no bright-line test can be used in making the determination. *See Lenz*, 79 S.W.3d at 19. Nonetheless, trial courts, in general, are in a better position than an appeals court to judge the weight and credibility of witnesses who testify in resolving who, if appointed as a child's managing conservator, would best serve

15

the child's interests. *See In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied).

The evidence also supports the trial court's conclusion that naming Mary as Nancy's managing conservator would serve Nancy's best interest. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Giving the appropriate deference to the responsibility the trial court had to resolve conflicts in the testimony and to weigh evidence, the record shows that the trial court could reasonably conclude that appointing Mary as Nancy's sole managing conservator would serve Nancy's emotional and physical needs. Moreover, the trial court could have reasonably concluded that placing Nancy with her mother—a parent who possessed the better parenting skills as compared to the others who were seeking the appointment—was in her best interest. The evidence also showed that Mary had provided Nancy a relatively stable home environment. Additionally, the evidence allowed the trial court to reasonably conclude that appointing Mary as Nancy's sole managing conservator would create a conservatorship allowing Nancy to have frequent and continuing contact with her mother, to have a safe, stable, and nonviolent environment in which to live, and that gave Mary and Curtis a mutual stake in sharing the rights and duties to parent Nancy so that she could become a productive adult. *See* Tex. Fam. Code Ann. § 153.001 (West 2014).

16

On this record, the trial court could reasonably choose to give Mary's testimony, the investigator's testimony, and the detective's testimony regarding the cause of Nancy's bruises more weight and credit than the testimony from the Frosts. *See City of Keller*, 168 S.W.3d at 819. Additionally, a trial court acts within its discretion when it bases its decision about whether excessive force was used to discipline a child on conflicting evidence. *See In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding) ("A trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision."). We conclude the trial court did not abuse its discretion by denying the Frosts' request to be named as Nancy's conservators.

We also conclude that the trial court did not abuse its discretion by denying the Frosts' request seeking court-ordered rights of visitation. On this record, the evidence did not show that Mary had refused to allow the Frosts any contact with Nancy. Instead, the evidence showed that before the Frosts decided to contest Mary's request to be named as Nancy's conservator, Mary allowed the Frosts substantial opportunities, without supervision, to visit with Nancy. However, Mary's attitude toward the Frosts changed when she learned that the Frosts were going to claim that Nancy had been neglected or abused. After learning that the Frosts were planning to assert that Mary had been abused, Mary refused to allow

17

the Frosts to see Nancy unless those visits were supervised. Mary explained that after learning of the Frosts' intent to claim Nancy had been abused, she felt that she would no longer trust them. At trial, Mary indicated that she wanted her parents to have a good relationship with Nancy and that she would permit visitation if those visits were supervised by someone she trusted. Based on the evidence at trial, the trial court was not required to believe that Nancy would not be allowed to have a relationship with the Frosts unless the court intervened and restricted Mary's rights to parent Nancy.

With respect to their grandparent-access claim, the evidence from the trial included no medical testimony or factual testimony showing that Nancy's health had been significantly impaired based on Mary's decision to restrict the Frosts' visits. *See* Tex. Fam. Code Ann. § 153.433(2). Although the evidence shows that Nancy had not had any significant contact with the Frosts for about a year before the trial, there was no testimony showing that Nancy had been harmed by not having seen the Frosts. On this record, the court could reasonably conclude that the Frosts' claim that Nancy's health or emotional well-being would be significantly impaired if they were not given a court-ordered right to have access to Nancy was unproven. *See id*. We hold that the trial court's denial of the Frosts' grandparent-

access claim did not constitute an abuse of discretion. *See In re Derzapf*, 219 S.W.3d at 333. Issues one and two are overruled.

Evidentiary Challenge-Admissibility of Lay Opinion

In issue three, the Frosts argue the trial court erred by excluding Alice's testimony that Mary was harming Nancy by not letting them have unsupervised visitation with Nancy. According to the Frosts, Alice's opinion that Nancy was being harmed should have been admitted as lay opinion testimony. *See* Tex. R. Evid. 701.[6]

A trial court's ruling excluding evidence is reviewed using an abuse-of-discretion standard. *See Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 906. Under that standard, a trial court abuses its discretion if it acts without reference to any guiding rules and principles, or if it acts arbitrarily and unreasonably. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). To gain a retrial, even when the appellant demonstrates that the trial court excluded relevant evidence, the appellant must also show that the error probably caused the factfinder to render an improper judgment. *See* Tex. R. App. P. 44.1(a)(1).

---

[6] Rule 701 provides that if the witness is not testifying as an expert, "the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Tex. R. Evid. 701, 61 Tex. B.J. 374, 392 (Tex. 1998, amended 2015).

Alice is Nancy's grandmother, and Alice's opinion that she thought Nancy would be better off if the Frosts had a right to see her was obvious. Given that Alice's opinion was based solely on Alice's status as a grandparent, the trial court could reasonably view Alice's opinion as one that would not have been helpful. In this case, nothing in the record shows that Alice had any particular training or expertise regarding the impact on Nancy's health or well-being of the Frosts having had limited access to Nancy. *See* Tex. R. Evid. 701(b), 61 Tex. B.J. 374, 392 (Tex. 1998, amended 2015) (limiting the opinion of lay witnesses to matters "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue"). Therefore, the trial court could have reasonably excluded Alice's opinion because it was not helpful to the court's understanding of Alice's testimony, and not helpful regarding whether Nancy had suffered or would suffer any significant physical or emotional harm if not given a court-ordered right of visitation. *Id*.

Moreover, even were we to conclude that Alice's opinion should have been admitted, the exclusion of her opinion was not harmful under the record in this case. During the trial, Alice was allowed to explain why she thought it was important for the court to give her court-ordered rights to force Mary to allow visitation. Alice indicated during the trial that she had a close relationship with

Nancy when Nancy was an infant, explaining that Nancy knows her, Nancy used to call her "mom," she loves Nancy, and that she wanted to make sure that Nancy was not being abused. Thus, Alice provided the trial court with a detailed explanation regarding why she thought Nancy would benefit from a court-imposed restriction on Mary's rights as Nancy's mother .

We conclude that the exclusion of Alice's opinion did not exclude evidence that would have materially aided the court's decisions regarding the issues in dispute. We conclude that the trial court did not abuse its discretion by excluding Alice's opinion, and that the exclusion of Alice's opinion, even if error, was not harmful. *See* Tex. R. App. P. 44.1(a)(1). Issue three is overruled.

Motion to Disqualify Attorney

In their fourth issue, the Frosts assert the trial court should have granted their motion to disqualify Mary's attorney of record, Jon Fultz. The Frosts assert that Fultz had a conflict of interest because he had previously represented David in a collections case related to David's business, and because David discussed the Frosts' desires regarding Nancy immediately before he hired Fultz to represent Mary in the SAPCR.

Following a hearing, the court denied the Frosts' motion to disqualify Fultz. During the hearing, David testified that Fultz had represented his business in a

21

collections case. David also explained that he met with Fultz to hire him to represent Mary in the SAPCR that she filed against Curtis.

We review a trial court's resolution of a claim alleging that an attorney has a conflict of interest under an abuse-of-discretion standard. *See In re B.L.D.*, 113 S.W.3d 340, 347 (Tex. 2003). Since disqualifying a party's attorney results in the party losing the attorney that it wanted, courts generally view disqualification as a severe remedy, particularly when the motion is based on an attorney's alleged conflict of interest. *See In re Dalco*, 186 S.W.3d 660, 667-68 (Tex. App.—Beaumont 2006, orig. proceeding [mand. denied]). If the claimed conflict relies merely on allegations of unethical conduct or on evidence showing only a remote possibility that a lawyer has violated a disciplinary rule or ethical rule, courts generally require that a party that files the motion to disqualify to produce evidence demonstrating that the moving party will be actually prejudiced by a decision denying the motion. *Id*. The party moving to disqualify another party's attorney bears the burden of proving that the alleged conflict will cause that party to suffer actual prejudice. *See In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding) (explaining that "[e]ven if a lawyer violates a disciplinary rule, the party requesting disqualification must demonstrate that the opposing lawyer's conduct caused actual prejudice that requires disqualification").

In this case, the Frosts do not provide any references to the record to demonstrate that Fultz used any information that he gained from his meetings with David to prejudice the Frosts' rights in the SAPCR. In the hearing on the motion to disqualify, the Frosts established that in October 2009, David hired Fultz to sue an individual who had not paid his business for work that his business performed on a construction project. In 2010, David met with Fultz while Mary waited outside Fultz's office to discuss whether Fultz would represent Mary in a SAPCR against Curtis. According to David, in that meeting, he told Fultz the factual background about the periods in the past in which they had Nancy in their care. However, David also testified that he told Fultz that he wanted to work with Mary because he wanted Mary "to accept her role as a mother." David testified that when the meeting with Fultz ended, he understood that he had hired Fultz to represent Mary in the SAPCR. When Fultz filed the SAPCR for Mary, it included none of the claims that the Frosts asserted years later when they filed their intervention.

From the evidence concerning the alleged conflict, the trial court could have reasonably believed that David understood that Fultz would be representing Mary in the SAPCR, even though David was to pay Fultz's bill. In the hearing, David acknowledged that he failed to anticipate during the meeting that the Frosts interests might conflict with Mary's regarding the SAPCR, but this evidence

23

supports the inference that in 2010, when he met with Fultz, David had not formed the intent to contest Mary's rights. When the meeting to hire Fultz occurred, Mary had not restricted the Frosts visits with Nancy, and the conflict between Mary and the Frosts about whether Mary should parent Nancy first arose in 2012, when the Frosts decided that Nancy was being abused.

In their motion to disqualify Fultz, the Frosts relied solely on Disciplinary Rule 1.09, a rule that concerns conflicts that may arise between an attorney and the attorney's *former* clients. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.09, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2013). The motion to disqualify did not rely on Disciplinary Rule 1.06, the rule that applies to conflicts that may be incurred by attorneys attempting to represent opposing parties in the same litigation. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.06(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2013). Moreover, David's account of the meeting with Fultz allowed the trial court to reasonably conclude that David hired Fultz to represent Mary, and to reject any inference that David thought that Fultz would be representing the Frosts' interests in the SAPCR.

During the hearing on the motion to disqualify, the Frosts also failed to prove that the factual matters in the collections case bore a relationship with the facts involved in the SAPCR. *See NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d

24

398, 400 (Tex. 1989). On appeal, David acknowledges that Disciplinary Rule 1.09 does not absolutely prohibit an attorney from representing a new client against a former client where the matters are not substantially related.

The Frosts failed to show the matters in the SAPCR were substantially related to the matters involved in the collections case. Nevertheless, David contends that without his consent, Fultz could not represent Mary against the Frosts where Fultz's representation would lead to a violation of Disciplinary Rule 1.05. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.09 (a)(2) (prohibiting a representation undertaken without prior consent "if the representation in reasonable probability will involve a violation of Rule 1.05"), Tex. Disciplinary Rules Prof'l Conduct R. 105, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2013). However, the Frosts failed to demonstrate that a violation of Rule 1.05 of the Disciplinary Rules occurred. The only confidential information that David identifies that he gave Fultz regarding Mary's impending SAPCR consists of his testimony regarding the circumstances surrounding his initial meeting with Fultz. Although David argues that he and his wife desired to be appointed as Nancy's conservators, his testimony about the meeting did not show that he ever conveyed that desire to Fultz. *See In re Nitla S.A. de C.V.*, 92 S.W.3d at 422 (indicating that even if a violation of a disciplinary rule has occurred, the trial court is not required

25

to disqualify the attorney unless the conduct caused prejudice that requires disqualification); *In re Meador*, 968 S.W.2d 346, 353-54 (Tex. 1998) (orig. proceeding) (concluding that on that record the Court could not conclude that an abuse of discretion had occurred where the trial court denied a party's request to disqualify opposing counsel). A party moving to disqualify another party's attorney must prove that a violation of a disciplinary rule occurred, and must show the violation with "specificity." *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990). A mere allegation that opposing counsel has acted unethically or evidence showing only a remote possibility that a violation of the disciplinary rules may occur is insufficient to meet the standard required. *Id.*

In this case, the trial court could have reasonably concluded from the evidence introduced at the hearing that a disciplinary violation would occur. Viewed in the light most favorable to the trial court's decision to deny the motion, the issues in the collections case were not shown to be related to the issues in the SAPCR. The trial court was also not required to believe that David disclosed any confidential matters to Fultz that were relevant to Mary's SAPCR. We conclude the trial court did not abuse its discretion by denying David's motion to disqualify Fultz. *See Metro. Life Ins. Co. v. Syntek Fin. Corp.*, 881 S.W.2d 319, 321 (Tex. 1994) (applying an abuse-of-discretion standard to the appeal of an order denying a

motion to disqualify that was based on Disciplinary Rule 1.09). Issue four is overruled.

Having overruled all of the Frosts' issues, we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on December 4, 2015
Opinion Delivered September 22, 2016

Before McKeithen, C.J., Horton and Johnson, JJ.

27